NUSSBAUM & DANNENBERG *vs.* HEILBRON *et al.*

1. Where one conducts business as agent, in the name of another as principal, he thereby holds the other out as owner of the business, and if this be untrue, and creditors suffer loss thereby, the pretended agent is liable at law for the fraud. So, if the relation of principal and agent really exists when debts are contracted, and the relation is dissolved before they are paid, the agent buying the principal out for the purpose of defeating the creditors, or to hinder and delay them, he is in like manner liable at law for the damages which this fraud occasions.

2. In order for equity to take jurisdiction on the ground of discovery, it must appear that discovery is necessary, not only that the complainant can more satisfactorily prove his case with than without it.

Equity. Debtor and creditor. Discovery. Principal and agent. Before Judge CRISP. Randolph Superior Court. May Term, 1879.

Nussbaum & Dannenberg filed their bill against Theodore Heilbron and Julius Heilbron making, in substance, this case :

In the summer and fall of 1877, Theodore Heilbron was carrying on a mercantile business in the town of Cuthbert, in the name of "J. Heilbron," meaning thereby Julius Heilbron. Julius is an old man of about ninety years of age, and the father of Theodore. The capital employed in the business belonged exclusively to the latter. Julius had no property and took no part in the management of the business. Theodore used the name of "J. Heilbron" because he felt that his own name had become known in the mercantile world as that of a man who had made a large

failure in business, to shelter his operations from his own creditors, and the better to perpetrate the fraud about to be stated on complainants. Julius consented thus for his name to be used as a fraudulent contrivance against existing and future creditors. In the summer of 1877, Theodore purchased goods to a large amount from complainants and others, and for a portion of such purchases gave notes signed "J. Heilbron." (The notes and accounts are all fully set out, and transfers to complainants are alleged and shown of those originally due to other creditors). These notes and accounts matured in the following November and were not met according to contract, though Theodore had appropiated to himself the entire proceeds of the business. Julius, on payment being demanded of him, disclaimed any knowledge of the business, and referred complainants and others to Theodore as his agent. Shortly after the maturity of said debts, Theodore claimed the stock then remaining in store, of the value of $5,000.00, or other large sum, as his own, under the pretense of a purchase from Julius, and changed the name of the business to that of " T. Heilbron," denying that he was any way responsible for the debts made in the name of " J. Heilbron." Where credit was given whilst doing business under the latter name, upon maturity, he procured the debtors to liquidate their accounts by giving notes payable to " T. Heilbron." He now claims that all of said debts belong to him, thus having for himself and to his own use and benefit carried on trade and obtained large credit under the assumed name of " J. Heilbron," as soon as he has covered that name with debt sufficiently to bring him a large amount of means, he fraudulently appropriates all the assets, and dishonestly repudiates all responsibility for any of the debts. To this fraudulent use of his name Julius consented, and is aiding his said son in carrying out the fraud so conspired between them, maintaining that he alone is responsible for the debts due to complainants; that he is utterly without means to pay; that he owes a large amount to his said son, and that the latter has ac-

quired a legal title to all his stock and assets. Theodore has brought suit against Julius to the May term, 1878, on a pretended debt of $1,600.00, or other large sum, so that by a judgment thereon, which, through collusion with the latter, he is to obtain without delay, he may keep up the appearance and advantages of a creditor of said Julius, to the end that complainants and other creditors of "J. Heilbron" may be cheated and defrauded of all their rights.

And for as much as complainants can find only in a court of equity the facilities for fully and thoroughly investigating, exposing and defeating the well-planned, deliberate and wicked frauds now being successfully carried on against them by the said defendants, they file this their bill praying that proper process may issue against said Julius and Theodore, etc. And for as much as complainants cannot satisfactorily prove the facts above alleged except by a resort to the conscience of said defendants, your orators pray for a discovery from each of them, and that they may be required, each by separate answer upon oath, to the best of their several knowledge, information and belief, full, true, direct and perfect answers to make to each of the matters above alleged, and especially that they may each answer the following specific interrogatories: (Here follow a number of questions deemed immaterial here). Prayer for a decree against both defendants for the full amount of complainants' claims, and for such other relief as may seem meet and proper.

To this bill the defendants demurred for want of equity, because no proper case had been made for discovery, and because of an adequate remedy at law.

The demurrer was sustained, and complainants excepted.

JOHN T. CLARKE & SON, by MARSHALL J. CLARKE, for plaintiffs in error.

A. HOOD, Jr., for defendants.

BLECKLEY, Justice.

1. According to the charges of the bill, the father had no capital, and the son no character. The man without character carried on business in the name, and upon the credit, of the man without capital. Of course, this was holding out the latter as owner of the business; and if he was not owner in fact, such holding out was a false pretense and a fraud. There would be an estoppel upon the son to deny ownership by the father, in so far as credit in the business was extended to the father. If the creditors sustain loss-by reason of trusting to the apparent ownership of the father, the son is liable at law for the fraud committed upon them in falsely holding out the father as owner. If the father co-operated in the fraud, he also is estopped, and when sued at law upon the notes and accounts, would not be permitted to defeat a recovery by denying his relation of principal to the son as agent. The credit was extended to the father; and under the facts alleged in the bill the creditors are secure of obtaining judgment at law against him. In case judgment is obtained against the father, the assets of the business will be liable to satisfy it; for the son will not be heard to say that they did not belong to the father. In case a recovery is had against the son for his fraud, it will be to the interest of the creditors making such recovery that the assets should be treated as the property of the son, for as his property they will be liable to satisfy the recovery. As yet, there has been no attempt to recover a judgment at law against the father. The complainants have neither established their demand against him, nor have they been defeated in an effort to do so on the score that the business was not his and the son had no authority to charge him with debts. It may be that he will set up no such defense, and should he not, or should it be set up and prove unfounded, the complainants will obtain judgment against the very person to whom the credit was given. But it is urged that with such a judgment, the com-

plainants could not get their money because the son has fraud-
ulently bought out the assets from the father, or pretends to
have bought, and has appropriated them to his own use, and
the father has no other property. Such a fraud as this cannot
stand against legal process, any more than it can stand in a
court of equity. If the assets can be found and are of a nature
to be seized, they can be taken under execution in the hands
of the son. If they cannot be found, or are not of a nature
to be seized, the son can be sued at law for trading upon
the credit of his father, and then buying out, or pretending
to buy out, the assets for the purpose of defeating, or of
hindering and delaying the creditors, and for appropriating
the assets to his own use to their injury. In any and every
view of the case, it is best that the complainants first go
forward to obtain a judgment at law against the father as
their debtor. Having done that (and under the charges of
the bill there is no obstacle to their doing it) they will be
in a condition to sue the son for a fraudulent disposition of
the assets; and, if need be, to go into equity to reach
them. The charge in the bill that the son is proceeding to
obtain a fraudulent judgment at law against the father
makes no difference. If the son is not a real, but only a
pretended creditor of the father, the real creditors will be
no more bound by such a judgment than they are by the
claim of a debt without a judgment establishing it. A real
creditor cannot prevent a pretended one from suing and
obtaining judgment; he can only combat the judgment,
and prevent it from being used to his injury. To proceed
regularly, and in order, may require a little more time than
to lump matters and pounce down upon both these defend-
ants at once; but it is well to avoid confusion even at the
expense of some delay. Indeed, if both defendants are
liable together for their combined frauds, and I think they
are, the remedy is at law, and there need be no resort to
equity. As to concurrent jurisdiction in cases of fraud,
see 58 *Ga.*, 11.

2. The allegations of the bill as to discovery are not suffi-

cient to give jurisdiction to a court of equity for this purpose. There is no charge that the complainants cannot prove their case, or some material part of it, without the discovery prayed for. It does not appear that discovery is necessary, but only that it is desirable and may be useful.

There was no error in sustaining the demurrer and dismissing the bill.

Cited by counsel : Code, §§3081, 3173 ; 58 *Ga.*, 11 ; 43 *Ib.*, 278 ; 45 *Ib.*, 204.

Judgment affirmed.