ROBERTS, for use, vs. DAVIS.

1. False and fraudulent representations as to the validity of the title to personalty, acted on by another to his injury, will estop the maker of them from setting up title to the property.

2. False representations as to the validity of the title to personalty having been made to one who had purchased it and was about to sell it; and acting upon such representations, he having sold and warranted the title to his vendee, in an action of trover by the maker of the representations against the last purchaser, the former would be estopped from asserting his title.

3. Although the representations were made after the party to whom they were made had purchased the property, yet, it appearing that the vendor under whom he held had sufficient means to make his warranty good, and that the holder of the property failed to secure himself, but aided the person making the representations in obtaining a bill of sale of the seller's property, such facts constituted an injury to the holder of the property which would work an estoppel upon the other party.

4. A consideration is valid, if any benefit accrues to him who makes the promise, or any injury to him who receives it.

5. While the evidence is conflicting, it is sufficient to sustain the verdict.

March 11, 1884.

Estoppel. Fraud. Vendor and Purchaser. Contracts. Consideration. Before Judge SIMMONS. Houston Superior Court. October Term, 1884.

Roberts brought trover against Davis to recover a mule. The case was carried to the superior court by appeal. It was so amended as to be in the name of Roberts for the use of Bryan. The defendant filed the following pleas:

(1.) The general issue.

(2.) That Roberts had sold the mule to one Washington, taking a note from him for $115.00, and retaining title until paid for, and Bryan was security on the note; that Washington paid $40.00 on the amount, and then traded the mule to one Tharpe, who traded it to one Taylor, and he, in turn, traded it to defendant; that neither Tharpe, Taylor nor defendant had notice of the claim of Rob-

erts; that after defendant traded for the mule, Taylor, hearing of the claim of Roberts, went to see Bryan about it, and caused Washington to turn over certain property to Bryan for the purpose of saving him harmless on account of his suretyship; that Bryan accepted the property for that purpose, paid the balance due to Roberts, and informed Taylor that the note had been paid, the suit settled, tne claim of Roberts released, and the title freed from all claim on the part of Roberts, Bryan or Washington; that Taylor communicated this fact to defendant, and he therefore filed no plea, believing the case to have been dismissed; that Bryan nevertheless appeared in court, and testified that the title was still in Roberts, but in fact the claim was fully paid off and discharged before the trial.

It is unnecessary to set out the evidence in detail, the material portions of it being stated in the decision.

It is only necessary to state that Taylor testified that Washington had sold the mule to Tharpe, and Tharpe had sold to witness, and the latter was negotiating the sale to defendant at the time of the conversation, etc., with plaintiff set out in the plea.

The jury found for the defendant.

Plaintiff moved for a new trial, on the following among other grounds:

(1.) Because the court charged as follows: "If you should believe from the evidence that, before J. W. Taylor traded the mule in dispute to Davis, the defendant, Taylor went to J. S. Bryan, the usee, to see about what kind of a lien there was on the mule, and Bryan told Taylor he would·be safe in trading, then you should find for the defendant."

(2) Because the court charged as follows: "If, before Taylor traded the mule in dispute to defendant, Bryan told Taylor he was safe in trading, though Bryan then had no title or lien on the mule, and subsequently acquired the title by paying the Roberts note, you should find for the defendant, on the same principle that the law will not

let a man stand by silent and see another purchase his property and not disclose the title."

(3.) Because the court erred in the whole charge to the jury.

(4.) Because the verdict was contrary to law and evidence.

The motion was overruled, and plaintiff excepted.

B. M. Davis, for plaintiff in error.

Duncan & Miller; R. N. Holtzclaw, for defendant.

Jackson, Chief Justice.

The facts of this case, either undisputed or as related by the witnesses of the defendant, are substantially these: An action of trover was brought by Roberts, who retained title to the mule sued for in this action until he was paid the purchase money therefor; Bryan was responsible for the purchase money, with a negro, Washington, who got the mule; Roberts had retained title to protect Bryan, and at his instance, and instituted suit for the mule in order to get his money. Bryan paid the balance of the note, and Roberts disclaimed title, being no longer interested, having got his money, and by order of court, this action of trover proceeded in the name of Roberts for the use of Bryan. The consideration which passed to Roberts for the mule was a note signed by Washington and Bryan for $115.00, and title was retained until the note should be paid, which is in evidence; pending the action of trover, brought, it seems, to get a balance of seventy-five dollars due on this note, Roberts having left it for collection in his attorney's hands, Bryan paid the $75.00 and took this receipt:

"Received of J. S. Bryan the sum of seventy-five dollars as payment for a mule sold by me to John Washington, I, Roberts, retaining title to said mule for purchase money, said Roberts binding himself to transfer the title to said mule to said Bryan, when he shall

recover said mule, in his action of trover now pending in the county court of Houston county.    December 19th, 1879 .
(Signed)                                          W. L. ROBERTS,
                                                  Per Davis & Riley,
                            Attorneys at law for Roberts."

Before this action was brought, Washington sold the mule to Tharpe, and Tharpe to Taylor; and Taylor being about to sell to Davis, the defendant, hearing that there was some cloud on the title, in possession of Bryan, before he consummated that sale, called on Bryan, whom he told of his purpose to trade the mule to defendant, and inquired about the title, when Bryan told him he could safely trade, as Washington had enough to pay for the mule, and asked Taylor if he could not fix up a bill of sale, so that he could control what Washington had.    Taylor told him that, if he would send Washington over to him, he would arrange it. Next day Washington came, and Taylor drew up the papers, and asked Bryan next day if he had got the papers; he said yes, and that he was perfectly satisfied.    When the trover suit was commenced, Taylor went to see Bryan, to have him pay the note and stop it, which he promised to do, and afterwards told him he had taken up the note and stopped the suit, and that he, Taylor, ought to pay part of the cost, as he, Bryan, had settled the suit, and that he need not attend the court.    Taylor refused to pay the cost. Heard by accident that the judgment recovering the mule had been rendered, and appealed to the superior court.

The court below held that these facts, this conduct of Bryan, if the jury believed the facts testified to be true, would amount to an estoppel upon Bryan from claiming title to the mule.    Charging the jury to the effect that, if Bryan told Taylor that he might safely trade the mule to defendant, before he had completed the sale to him, when Taylor went to him and asked him about any title or lien he had on the mule, telling him of the contemplated trade to defendant, and that, if at that time Bryan had no title, it would make no difference if subsequently he acquired title, he would still be estopped; applying to the case,

under the facts, if believed, the well settled principle that one cannot stand by and see another purchase property in silence, when he has a title to, or lien thereon, without disclosing to him the fact.

Construing this charge in the light of the facts disclosed in this record, we think that it hardly gives the law as strongly as it is on those facts against the plaintiff in error. These facts, if believed by the jury, show fraud to such an extent that no court would allow a suitor to set up title under such circumstances. They amount to an estoppel *in pays*. The point is covered by the Code, §§2966 and 3753. The former contains the principle applied by the court below, the doctrine of silence when honesty demanded disclosure. So that if the plaintiff, Bryan, had failed to speak, when Taylor asked him about his title or lien, and had permitted him to sell to defendant, he would have been estopped; and if subsequently he converted the lien which he had then into a title, he would be equally estopped *ex equo et bono*, in all equity and good conscience.

But how much stronger than mere failure to tell the truth are the facts told by Bryan here to Taylor. He tells him that Washington has enough to pay the note; he gets him to procure a bill of sale or lien on Washington's property, which he said was sufficient to pay the note and remove the cloud off the title to the horse; he expresses himself perfectly satisfied, and acknowledges the receipt of the paper Washington gave him, procured by Taylor to secure the note, and when Taylor hears of the suit in trover for the mule, and calls on him to settle the note, he tells him he has done it and that the case is settled, and asks him to help pay the costs, and all this is done in the face of an arrangement he has made with Roberts's attorneys to carry on the suit, and make him a title to the mule, when Roberts gets a verdict and judgment for the mule. Surely, in the language of section 3753 of the Code, this conduct makes a case of admissions on which Taylor " acted," both " to his own injury" and Bryan's " benefit,"

and the case is one "where it would be more unjust and productive of more evil to hear the truth than to forbear the investigation."

No court would allow title to be set up in the lurid light of a fraud so foul.

But it is argued that Davis, the defendant, was not present, and that he did not purchase under the deception practiced by Bryan; but the reply is, that he stands in Taylor's shoes. Taylor warrants title to him. Taylor himself is directly interested in this trover case, because he must make good the title to Davis, and Taylor would be badly hurt by the conduct of Bryan in thus deceiving him.

But the able and ingenious counsel for plaintiff in error argues further, that Taylor had already bought from Tharpe and Tharpe from Washington, when these representations were made by Bryan, and the bad title was in him then, and Bryan's deception made it no worse for him. The reply is conclusive, that Taylor could then have protected himself from Washington. If Washington had effects enough to satisfy Bryan, he had enough to make good the mule to Taylor; and if Taylor had the influence with Washington to induce him to secure Bryan, he would have had enough to get him to secure himself; but relying upon Bryan's representations and assurances, he did have him, Bryan, secured, and left himself nothing but those representations and assurances, to make his own warranty of title good to Davis.

The indefatigable and suggestive mind of counsel falls back upon another position, and takes ground that no consideration passed from Taylor to Bryan to make these promises available in law, but they are at best *nudum pactum*. It may be answered that false representations or admissions on which others act need no consideration; certainly none other than action to one's injury, caused by them, or action beneficial to the party making them on the strength of the representation. We have seen that both of these results followed from the representations of Bryan.

And these will support any contract. The Code, section 2740, declares that "a consideration is valid if any benefit accrues to him who makes the promise, or any injury to him who receives the promise." In the case at bar, there was real service done, *a quid pro quo.* Taylor got Washington to secure Bryan, and Bryan expressed himself satisfied with that consideration.

If Taylor's version of this affair be correct, and there is plenty of evidence to sustain the jury in finding for that version, then it would be simply iniquitous, nakedly leprous, to allow Bryan to recover the mule. And he is the real plaintiff. Roberts disclaims title and the suit in trover, and his name is used for the benefit of Bryan only. It is true that the evidence is conflicting, but the jury has settled the conflict. The charge gave the issue to them, and the court below, on the motion for a new trial, exercises his discretion to let the verdict stand. It is sheer effrontery to say that it was abused. On the contrary, this verdict, piled upon that of another jury, ought to stand.

Judgment affirmed.