## CROSBY v. MEEKS et al.

1. Where there is a dispute between a company and an individual as to which of the two owns a tract of land, and the agent of the company has falsely and fraudulently represented to such other claimant that his company has title to the property and "back deeds" to the same, and, acting upon this, such other claimant purchases from the company an interest in the land and receives from the company a deed thereto, which interest he for value transfers by deed to an innocent purchaser who likewise acts upon the representations made by said agent, the agent is afterwards estopped from setting up title in his own name against such purchaser. This is true though such agent may afterwards acquire a perfect legal title to the property, not derived from either of the claimants above mentioned.

2. There was sufficient evidence to sustain the verdict.

Submitted May 17, — Decided July 20, 1899.

Complaint for land. Before Judge Sweat. Ware superior court. November term, 1898.

*John C. McDonald* and *G. J. Holton & Son*, for plaintiff.
*Hitch & Myers*, for defendants.

LEWIS, J. Silas A. Crosby brought complaint for land, in Ware superior court, against Charles F. and Warren Meeks. To his petition was attached an abstract of title, dating back to a grant from the State to John Chancey, made in 1842. To this petition the defendants, besides denying the allegations of title in the plaintiff as set forth in his declaration, set up substantially the following equitable defense: John Denton, under whose warranty deed the defendants claimed title to the land, had a regular chain of title to the premises in dispute, when the plaintiff came to him and represented to him that the Waycross Lumber Company, of which plaintiff was then the agent, had the true title to the land, and that the chain of title which Denton had was defective; that all said company wanted was the turpentine and timber rights on the premises; and to settle all differences and save litigation, plaintiff proposed to Denton that if he would make the Waycross Lumber Company a deed to the turpentine and timber on the land, he (plaintiff) would obligate himself in writing to cause the said company to make Denton a deed to the land, and would get up and deliver to Denton the true title. This agreement was

executed between the parties, to the extent of Crosby's giving the written obligation to Denton and afterwards delivering to Denton a deed from the company. The defendants further charged in their answer, that at the time this agreement was made the Waycross Lumber Company had no title to the land, and that the representations as to its title made by Crosby were false and fraudulent, and made with the purpose of deceiving Denton and defrauding him of the timber and turpentine on the land. Subsequently Crosby procured his title to the land, but, instead of taking title thereto in the name of his company, he caused the deed to be made to himself, upon which he entered suit and was seeking to eject the defendants from the premises. It appears from the testimony introduced on the trial, that there was some dispute or difference between John Denton and the Waycross Lumber Company as to who had the true title to the land. We infer from the testimony that Denton was in possession of the property at the time of the agreement had with the company's agent, Crosby. The defendants desired to purchase the land, but did not know whether the company or Denton owned the same. Crosby had represented that his company had the "back titles" to the land, and that Denton did not have the correct chain of title. When the compromise agreement was had, Crosby gave to Denton the following receipt: "Georgia, Coffee County. Received of John Denton a lease to the turpentine and sawmill timber on lot of land number 519 in the 5th district of Ware county, for which I am to get the back titles and have the company to make him a deed for, as soon as convenient. [Signed] S. A. Crosby, Agent, Waycross L. Company." It further appeared from the testimony that the lease privilege was granted by Denton to the company, that the company afterwards executed to him a deed to the premises, and that in pursuance of the lease the company enjoyed the privilege thereunder of getting the turpentine and sawmill timber from the land. After Denton had thus procured his title from the lumber company, on the 13th day of December, 1889, he conveyed the premises by warranty deed for a valuable consideration to the defendants. The defendants, in trading for the land with Denton, acted upon the

representations made by Crosby, the plaintiff, to the effect that the lumber company had the true title and the back deeds to the property, and immediately after receiving their deed from Denton they went into possession of the land and have continued in possession ever since. In 1893 the plaintiff purchased the premises in dispute from the party who held the regular chain of title under a grant from the State, and, instead of taking title thereto to the lumber company, Crosby had the deed executed to himself individually. The defendants likewise introduced a chain of deeds, tracing their title back to the original grantee of the State, but it appears that this original grantee's deed in their chain was of subsequent date to that introduced by the plaintiff in his regular chain of title. Plaintiff also introduced a previous suit against these defendants, instituted within seven years from the time they went into possession under their deed, and showed that this original suit was dismissed and the present one instituted within six months thereafter. The only testimony materially contradicting that of the defendants was contained in the depositions of the plaintiff himself, who denied making any representations, as charged, about the title to the land; but he nowhere says in his testimony that at the time of making the compromise settlement with Denton he did not know that the company he represented did not have the true title to the land, nor does he say that he was then ignorant as to who was the true owner. The jury returned a verdict for the defendants, and the plaintiff excepted to the judgment of the court overruling his motion for a new trial.

1. Besides the general grounds of the motion, that the verdict was contrary to law and the evidence, exception is taken to the following charge of the court: "But the court charges you that notwithstanding this plaintiff, S. A. Crosby, has shown upon this trial in himself the perfect title to the lot of land in question, that is to say, has introduced in evidence a full and complete chain of title, showing the perfect title to this lot of land; if you shall believe the claims and contentions as made upon the part of the defendants to be true, that S. A. Crosby, the plaintiff in this case, in the transaction which he had as

between the Waycross Lumber Company on the one side and John Denton on the other, if he made false representations by which Denton was deceived and under which these defendants were deceived, resulting to their injury and hurt; if he falsely represented · in that transaction that the Waycross Lumber Company was the true owner of this lot of land and held the back, outstanding, true or perfect title, when as a matter of fact such was not the case and he knew it; if he permitted Denton to act upon that and rely upon it in good faith; if during the possession and claim of this lot of land by these defendants and the working of the timber for turpentine purposes, and the cutting of the timber for sawmill purposes by the Waycross Lumber Company or other parties holding under them or through them; if he stood by and permitted all this to go on, and if fraudulently, as claimed upon the part of these defendants, thus overreaching the defendants and their predecessor in title, John Denton, instead of having the Waycross Lumber Company, if it did not actually have the true, genuine, outstanding title, to get it up and surrender it up to these defendants or to John Denton; if he got up the title and took a deed to himself under all these circumstances and after all this had occurred, and then undertook to assert title to the land that is claimed by these defendants and to eject them from it; the court charges you that if you believe that to be true, it would be unjust and inequitable to permit him to do that, and it would be the duty of the jury, in that event, to find a verdict in favor of these defendants." The main objection made by counsel for the plaintiff to this charge of the court is, in substance, that the plaintiff was simply acting as agent of the Waycross Lumber Company in the transaction between the company and John Denton; that he made no promise for himself individually, but only promised for the company that it would get up the back title to the property in question; and that the plaintiff, acting for himself and not as agent of the company, had the right to acquire the genuine title to the land, and was· not thereafter liable to the defendants for any conduct or sayings of his while acting as agent of the company. Counsel for plaintiff seem to rely upon the position that Crosby as an indi-

vidual was a stranger to this transaction between the lumber company and Denton, and that, as strangers can neither take advantage of nor be bound by an estoppel, its binding effect was between the immediate parties or their privies in blood, in law, or in estate.    As a proposition of law there can be no question about the soundness of the principle, that when one makes' a false representation touching the validity of the title to property that he sees is about to be transferred to an innocent purchaser, upon which representation the latter has acted in good faith and upon the faith of which he has bought the property, the former can not thereafter set up as against such purchaser or his vendee or privies in estate any claim in himself adverse to what he has previously commended as a perfect title.    It manifestly makes no difference in what capacity he made such representation, whether on his own account, acting in his individual interest, or whether he was acting as agent in the interest of another.    It is true that for the fraudulent misrepresentations of an agent acting in the course of his employment the principal is also bound, but it does not follow from this that the agent is not himself likewise individually and personally liable.    Instead of being a stranger to the transaction, he is a direct participant in it, and in making the false representations he is responsible individually for the perpetration of the fraud, and is liable in damages as an individual to any one who has acted upon such representations to his injury.

It was accordingly held, in the case of Campbell v. Hillman, 61 Am. Dec. 195, that an agent is responsible individually to a purchaser for fraud committed by him in the sale of property, although he does not profess to sell the property as his own, but acts throughout in his capacity as agent.    It was further held in the same case, that "an agent is not absolved from liability for misrepresentation as to his principal's title to slaves, by the mere fact that he informed the purchaser that his principal derived title under a will, which the purchaser had sufficient time and opportunity to examine, where the purchase was made upon the faith of the agent's representation that his principal had a good title, and the representation was calculated to induce belief and prevent further inquiry."    In Mechem

·on Agency, §§ 563 et seq., this question is lucidly discussed, .and the personal liability of an agent for representations made in behalf of his principal is clearly recognized. Among other things on this subject, that author says: "It does not relieve the .agent that the wrong was committed with the knowledge of the principal, or by his consent or express direction, because no ·one can lawfully authorize or direct the commission of a wrong. A fortiori is it no defense that the agent in committing the wrong violated his instructions from his principal. Neither is it material that the agent derives no personal advantage from the wrong done. All persons who are active in defrauding or injuring others are liable for what they do, whether they act in ·one capacity or another." It is really the person who directly participates in the perpetration of the fraud, whether he is acting for himself or another, as principal or agent, who is especially and particularly liable to the party wronged. In entire .accord with these views are the decisions of this court in the cases of *Nussbaum* v. *Heilbron*, 63 *Ga.* 312, and *Roberts* v. *Davis*, 72 *Ga.* 819. From these principles we think it necessarily follows that if the defendants in this case had acted upon the false and fraudulent representations of Crosby acting as agent for the lumber company, and in consequence had been forced to surrender the possession of land bought by them in good faith, a right of action for damages in their favor against the .agent as an individual could clearly have been maintained. If this be true, then certainly they have a right to defend a suit instituted by Crosby himself, the success of which would cause him to reap the fruits of his own wrong.

2. But it is insisted further by counsel for the plaintiff, that the evidence introduced on the trial was not sufficient to warrant the charge complained of, and that the verdict was contrary to the evidence. We think the charge of the court was fully warranted by the testimony. The decided weight of the evidence was in favor of the defendants' contention that the representations charged in their equitable plea were actually made by the plaintiff. The very suit he brought was based upon a theory which necessarily brands such representations as false. Upon the issue as to whether or not he made

such a false statement the jury decided against him and in favor of the defendants. We are inclined to think that the judge in his charge to the jury really gave the plaintiff the benefit of a principle to which he was not entitled; for he based his charge as to plaintiff's want of a right to recover, not only upon the idea that he made the untrue statements alleged upon which the defendants acted to their hurt, but that he knew they were untrue when he made them. We do not think that even if he had made the statements in good faith, this fact would have been of any avail to him in this action; for it would have been no less a wrong to the defendants, so far as the injury to them is concerned, whether the statements were made in good or bad faith. It is laid down in Mechem on Agency, § 574, that "an agent who, for his principal, wrongfully takes or detains or sells the goods of another, is personally liable in an action of replevin, trover, or other action for the tort, even though he acted in good faith supposing the goods to be his principal's, and although he has delivered the property to his principal." But even giving the plaintiff the benefit of the theory advanced by the judge in his charge to the jury, we think there was sufficient evidence to sustain the verdict.

*Judgment affirmed. All the Justices concurring.*