### SANDERS & ABLES *v.* CARTER.

1. An obligation in writing, by the terms of which one of the parties
agrees to "make a deposit of one hundred and fifty dollars " with
a designated person, "as a guarantee or forfeiture" to be paid to
the other party to the agreement in the event of the failure, re-
fusal or neglect of a certain corporation to convey certain specified
realty within a given time to the promisee, the promisor waiving
"all recovery by process of law or otherwise," is upon its face an
agreement for stipulated damages ; and it appearing by extrinsic
evidence that the subject-matter of the agreement was such that
damages resulting from a breach thereof could not be readily or
accurately ascertained, which fact must have been in contem-
plation by the parties in fixing the amount of the forfeiture, and
no facts being shown which would indicate that the sum so agreed
upon was disproportionate, unreasonable or unjust, the whole
amount named in the agreement could properly be recovered as
liquidated damages.

2. The giving of a receipt which is beneficial to the party taking it,
and which the other party is under no duty or obligation to give
without being compensated therefor, is a sufficient consideration

to support a contract to pay liquidated damages on the happening or not happening of a specified event.

March 27, 1893. Argued at the last term.

Before Judge Janes. Paulding superior court. January term, 1892.

Action by Carter against Sanders & Ables on the contract set out in the opinion. The verdict was for $150 in favor of the plaintiff, and defendants excepted to the refusal of a new trial.

A. L. Bartlett and G. P. Roberts, for plaintiffs in error.

W. E. Spinks and McGregor & Camp, by brief, *contra*.

Lumpkin, Justice.

1. What construction should be placed upon contracts similar to that sued on in the present action, is a question which has long vexed and perplexed the courts both of this country and of England. It may be stated as definitely settled, however, that in determining whether the forfeiture named in an instrument of this kind is to be regarded as liquidated damages, or only in the nature of a penalty, much depends upon ascertaining the true intent of the parties. It was formerly held that when it satisfactorily appeared that the parties contemplated that the amount specified in their contract should actually be paid upon a breach thereof, the agreement, in the absence of fraud, should be strictly enforced, as a court of law possesses no dispensing power, and cannot inquire whether the parties have acted wisely or rashly in respect to any stipulation they may have thought proper to introduce into their agreement. Much has pertinently been said in support of this rule; but difficulty seems to lie in its practical application, and the courts have latterly widely departed therefrom. In some of the earlier cases in which this departure was made, the artificial reasoning was sought to be introduced that parties could not be presumed to have en-

tered willingly and advisedly into an agreement manifestly unreasonable and unjust, and grossly disproportionate to the damages actually sustained.    But it was found that this rule of construction could not consistently be applied in many instances, for while it might appear that the exactions of the agreement were indisputably unjust and oppressive, the intention of the parties to so stipulate could not seriously be questioned. Accordingly, it has more recently been held, upon the broader ground of good conscience and natural equity, that although the intention to stipulate for liquidated damages be manifest, the court will regard the forfeiture named, if excessive, merely as a penalty, and award to the party injured by a breach of the agreement only such damages as he may have actually sustained.    Many reasons which seem sound in principle have been advanced in support of this doctrine, and the trend of judicial decision now lies in the direction indicated.    In delivering the opinion in the case of Basye *v.* Ambrose, 28 Mo. 39, it was said by Scott, J.: " No system of laws would command our respect, or secure our willing obedience, which did not to some extent provide against the mischiefs resulting from improvidence, carelessness, inexperience and undue expectations on one side, and skill, avarice and a gross violation of the principles of honesty and fair dealing on the other. . . . It has been remarked that in reason, in conscience, in natural equity, there is no ground to say, because a man has stipulated for a penalty in case of his omission to do a particular act (the real object of the parties being the performance of the act), that if he omits to do the act, he shall suffer an enormous loss, wholly disproportionate to the injury to the other party." The correct rule to be adduced from the leading authorities would therefore seem to be : Where the damages resulting from a breach of the agreement were evidently the subject of calcula-

tion and adjustment between the parties and a certain sum was agreed on and intended as compensation, and is in fact reasonable in amount, it will be allowed by the court as liquidated damages; but though the intention of the parties seems clear and manifest that a breach shall operate as a complete forfeiture of the entire sum named in the agreement, the court will decline to lend its assistance to enforce the payment of an amount which is grossly excessive, unreasonable and unjust, and will treat the stipulation as in the nature of a penalty, and will award only such damages as the injured party may have actually sustained. Even with this guide, however, the subject is not entirely relieved of difficulty; and to the fact that the circumstances of each individual case present new and distinct considerations difficult of correct determination, we apprehend is due the conflict apparently still existing in decisions of the present day. For a full discussion of the subject under investigation, see 1 Suth. Dam. 475 *et seq.*; 1 Sedg. Dam. §389 *et seq.*; 5 Am. & Eng. Enc. L. 24, 25. Our code, §§2940, 2941, specially deals therewith.

It is highly important, as has been seen, to determine in every case the real intent and purpose of the parties; and it is here that most frequently the greatest difficulty is encountered. In many instances the instrument which purports to set forth the contract is vague, indefinite and uncertain, and consequently extrinsic evidence to explain the subject-matter of the agreement, its purpose, and the circumstances under which it was entered into, must necessarily be resorted to. The foregoing authorities furnish numerous tests which may be applied as throwing light upon the question. The language of the instrument itself must, of course, be primarily looked to and considered, though the use therein of the words "penalty" or "liquidated damages" will by no means always be conclusive. The term "forfeiture" in itself

affords little evidence of intention; and taken in connection with other expressions of the parties, appears to have been construed indifferently one way or the other. That the parties agree to deposit a specified sum as security for performance, using language which imports an understanding that upon a breach the holder is to pay such amount over to the injured party without further formality, will generally be held decisive of the intent to stipulate for liquidated damages. Other considerations of equal weight may often turn the scale. But the courts lay great stress upon the importance of considering, in connection with the instrument itself, the subject-matter of the agreement and all the attendant circumstances of its execution. The matter for adjustment may be such that, in the event of a breach, the damages resulting therefrom would be difficult to readily or accurately ascertain or approximate. It is apparent this is of signal importance, for in such case it may very reasonably be presumed that the parties had in contemplation the uncertainty in this regard, and agreed upon the sum stipulated with the special end in view of obviating all future difficulty arising therefrom. It might be, also, that the party injured would sustain damages not susceptible of computation in dollars and cents, by reason of a peculiar interest in the performance of the agreement not applicable to one otherwise situated. All these, and other circumstances, the court will carefully pass upon. And of course, in determining whether the amount stipulated as a forfeiture is reasonable, and not disproportionate to the damages which would necessarily flow from a failure of performance, the relation of the parties one to the other, their peculiar situation, the absence or presence of fraud or oppression, and the purpose the agreement seeks to subserve, will in every instance furnish valuable assistance in reaching a fair and just conclusion.

In the light of the foregoing, we will endeavor to apply to the instrument now under consideration the correct rules of construction. That agreement reads as follows:

"ATLANTA, GA., September 27th, 1889.

"Agreement between E. M. Carter, party of the first part, and Sanders & Ables, of the second part. The said Sanders & Ables, party of the second part, do hereby agree that they will, on September 28th, 1889, make a deposit of one hundred and fifty dollars with W. I. Fain, of Paulding county, Ga., for and as a guarantee or forfeiture to the said E. M. Carter, in case the E. T.; V. & Ga. Ry. Co. refuses or neglects or fails to make a deed to E. M. Carter, party of the first part, for certain tract of land lying on right of way No. 208; the said deed to be made not over six months from the date of this instrument. In case the said deed is not made according to the provisions herein stated, and within the time named, the money shall be paid to E. M. Carter; and Sanders & Ables do in such case waive all recovery by process of law or otherwise. This instrument is hereby signed by the parties to the agreement herein stated, and duly witnessed.

"Witness:                         E. M. CARTER,
"W. R. CHAMBERS.          SANDERS & ABLES."

On its face, the instrument certainly imports a stipulation for liquidated damages. For aught that appears therein, one hundred and fifty dollars, if not, indeed, an inconsiderable compensation to be accepted in lieu of a "certain tract of land" of unstated value or dimensions, most assuredly cannot be said to be *per se* grossly disproportionate to the loss of the same. It is agreed that Sanders & Ables shall deposit that amount with a designated person "as a guarantee or forfeiture" to Carter, to be paid to him "in case the deed is not made according to the provisions" named in the agreement. That payment should be made to Carter by the person holding the deposit without any further agreement or consent on the part of Sanders & Ables is evident, because

they expressly "waive all *recovery* by process of law or otherwise." It is said by Sedgwick that: "Where the instrument refers to a sum deposited as security for performance, the forfeiture, if reasonable in amount, will be enforced as liquidated damages. The intention is evident here that the money shall actually be paid over upon breach of the contract." 1 Sedg. Dam. §414. And it was expressly so ruled in Wallis *v.* Smith, L. R. 21 Ch. Div. 243. See, also, Eakin *v.* Scott, 70 Tex. 442; Mathews *v.* Sharp, 99 Pa. St. 560; *Swift* v. *Powell*, 44 *Ga.* 123.

On the trial it was developed by extrinsic evidence that Sanders & Ables were subcontractors who had been engaged in filling in with earth a trestle on the East Tennessee, Virginia & Georgia railway. During the progress of the work, a quantity of earth spread over a small portion of Carter's land adjacent to the railway, and he conferred with various officials of the railway company with a view to making an arrangement by which, in consideration of his making a deed to the land so covered up, the company would, in return, convey to him a strip of land along and within its right of way. Carter contemplated erecting across a small stream running through his land a mill-dam, and the purpose for which he desired to acquire the strip of land in question was that he might have the privilege of backing water thereon. Before the railway company had given any definite answer to the proposition which Carter had submitted with reference to the exchange indicated, the agreement above set forth was entered into between himself and Sanders & Ables. The amount of land belonging to Carter which was covered up with dirt from the fill was variously estimated by the witnesses, and there was conflicting evidence as to its value. The strip of land which he wished to procure from the railway company in exchange therefor was in no way described, nor

was any evidence of its value introduced. Its chief, if not its only, value to Carter was, apparently, its situation relatively to his proposed mill-dam, which he could not erect at the point desired unless he could secure the right to back water upon the company's right of way. It is evident, therefore, that the subject-matter of the agreement was such that a stipulation as to what damages should be paid in the event of a breach was not only proper, but necessary to protect the interests of the parties on both sides. Damages of such special character could, at best, be only approximately estimated, and could be neither readily nor accurately ascertained, then or afterwards. Unquestionably, Sanders & Ables had as much interest in having definitely settled a matter so uncertain as did Carter. Taking into consideration the use of the land contemplated by the parties, the amount agreed upon as a forfeiture certainly appears a reasonable and conservative estimate of the loss which Carter would sustain if unable to erect his mill-dam by reason of failure on the part of the railway company to grant him the water privileges he desired. Indeed, we can arrive at no other conclusion, being aided by no evidence on the subject introduced upon the trial. If, as matter of fact, the defendants in the court below contended to the contrary, which does not appear by the record, it was incumbent upon them to offer proof to sustain their position.

Regarding the instrument in the light of all the surrounding circumstances attending its execution, we are convinced that it was the intention of the parties to stipulate for liquidated damages; and the sum fixed and agreed on as a forfeiture being, for aught that appears, neither unreasonable nor even slightly excessive, recovery by the plaintiff of the entire amount was proper. The trial judge seems to have regarded the forfeiture as in the nature of a penalty, and the charge authorized the jury,

in case the plaintiff was entitled to a recovery, to find the actual damages; but as the amount of their verdict did not exceed that stated in the agreement, this certainly is not a matter about which the plaintiffs in error can complain.

2. The defence mainly relied on in the trial court was the special plea, "that the alleged contract sued on, which is the foundation of plaintiff's suit, is *nudum pactum* and without consideration to support it, because there was no benefit accruing to defendants, or any injury, forbearance, detriment, loss or responsibility, labor or service, on the part of plaintiff." It appears from the evidence offered in support of this plea, that Sanders & Ables had previously entered into a contract with Carter, by the terms of which they were to have the privilege of entering upon his land and taking therefrom sufficient earth to fill Pumpkin Vine trestle, on the line of the East Tennessee, Virginia and Georgia railway. The price agreed on was three hundred dollars cash, and three notes of one hundred dollars each, to be paid upon completion of the work. McDonald, Shea & Co., the original contractors who had undertaken to fill the trestle, had sublet their contract to Sanders & Ables, stipulating that 15 per cent. of the amount agreed on to be paid to the subcontractors be retained until the work was finished. Upon the performance of this contract by Sanders & Ables, McDonald, Shea & Co. were indebted to them between $1,800 and $2,000, but refused to make payment of the same until Sanders & Ables should procure Carter to sign the following receipt: "Received of McDonald, Shea & Co. seventy-five dollars ($75) for dirt taken from three acres of land, more or less, and used in filling trestle No. 317 B, and known as Pumpkin Vine trestle, on the East Tenn., Va. & Ga. R. R. This receipt is also a relinquishment of all claims and demands, and is sufficient and full release of

all indebtedness resulting from the use or material taken from the said three acres of land." Carter, upon being solicited by Sanders & Ables to sign this receipt, de-clined to do so, assigning as a reason that he had never in fact received any money from McDonald, Shea & Co., and thought his signing of the receipt would interfere with his rights against the railway company in regard to the land belonging to himself which had been cov-ered with earth in constructing the trestle, and which he desired to exchange for a strip along the company's right of way. Although urgently pressed, he persisted in his refusal for some twenty-four hours, when, upon representations by Sanders & Ables that they owed large amounts for labor, etc., and would be greatly distressed if unable to procure their money from McDonald, Shea & Co., he finally consented to sign the receipt if Sanders & Ables would secure him against possible loss by sign-ing the instrument sued on in the present action, above set forth. At this time Sanders & Ables had paid to Carter $400 on their contract with him for earth, and subsequently promptly paid the two outstanding notes for $100 each. McDonald, Shea & Co. did not in fact owe to Carter, nor did he receive directly from them, the $75 specified in the receipt, or any other amount; nor does it appear that he had previously been concerned with them in any dealings whatsoever. It may be gathered from the testimony introduced that by the contract be-tween the original contractors and the railway company, the latter agreed to allow $25 an acre for land from which earth was taken to fill the trestle, and that McDonald, Shea & Co. desired the receipt from Carter to be used as a voucher for which they might receive credit in their settlement with the railway company.

Under these facts it is clear that, although he may not thereby have surrendered or waived any substantial right, Carter was under neither a legal nor a moral obli-

gation to sign the receipt in question. Neither can there be any question that by his so doing Sanders & Ables received material and substantial benefits. Sanders in his testimony says: "We owed about $1,000 for labor, that was then due; the men was expecting the money; I had promised it them, and they needed it. I told Mr. Carter our circumstances, and told him unless we could get the money McDonald, Shea & Co. then owed us, we could not pay our men; that they were expecting it, and unless he would sign that receipt, we could not get the money, and we would be ruined—our creditors would probably sue us and beggar our wives and children." Certainly, Mr. Sanders at that time fully appreciated the importance of immediate payment to his firm, for he pictures their need for ready money in unmistakable terms. He can hardly now consistently say he received no benefit by reason of the fact that he was enabled, by receiving payment of the money due him, to relieve the pressing necessities his firm was under, and avert the consequence he so greatly, and with such apparent reason, feared would ensue if unable to meet its obligations. At any rate, he then thought the consideration sufficient to support his promise to Carter, and however he may now regard the benefits he has derived, the real adequacy and sufficiency of the inducement to such promise have not been diminished by lapse of time.

Our code, §2740, declares that "A consideration is valid if any benefit accrues to him who makes the promise, or any injury to him who receives the promise." It will be observed that the language employed negatives the idea that both benefit *and* injury must concur, but expressly provides that either, by itself, will support the promise; and this court has uniformly followed the plain mandate of this section, and held that, in the absence of fraud, even a slight benefit will be sufficient. *Crine & Daniel* v. *Davis*, 68 *Ga.* 141; *Roberts* v. *Davis*, 72 *Ga.* 824; *Burruss* v. *Smith & Turner*, 75 *Ga.* 710.

There was no error in the instructions of the court upon this issue, and a new trial was properly refused.

*Judgment affirmed.*