960. MAYOR AND COUNCIL OF THE CITY OF BRUNS-
WICK *v.* ÆTNA INDEMNITY COMPANY.

1. Prima facie the amount of money named in a bond conditioned for the faithful performance of the obligations of a contract is a penalty, and not liquidated damages; and a recovery in an action upon the bond will be limited to the amount of the actual damage sustained and proved.

2. Where, to secure the performance of the terms of a contract, there is a stipulation for the payment of a fixed, unvarying sum, upon the breach of any of several promises of varying degrees of importance, especially where the damages for the breach of some of them would be easily ascertainable, the sum named will be construed to be a penalty.

3. The designation of a conventional amount to be paid upon the breach of a contract will not be held to liquidate the damages, where it is apparent that it was not the intention of the parties that the obligor could escape further liability by paying that sum.

Action on bond, from city court of Brunswick—Judge Gale. December 30, 1907.

Argued February 25,—Decided September 28, 1908.

The Southern Electric Railway, Light & Water Company, with the view of constructing and operating a number of public utilities, including gas works, an electric-light plant, and an electric street-railway, at Brunswick, Georgia, began negotiations through one Neff, its agent, with the mayor and council of that city, for certain rights, permits, and franchises, including the use of the public streets, the fee to which was vested in the city. The city council, pursuant to the negotiations, passed an ordinance in which the desired franchises were granted, the conditions under which they were to be enjoyed were stipulated, and a number of covenants were imposed upon the grantees. Among other things, the grantees of the franchises were not to cut or molest any shade trees without special consent, were not to lay tracks except in certain portions of the street, were not to charge any passenger more than five cents for any continuous passage in any cars they might operate, were to grant transfers, were to permit policemen to ride free, were to obey all ordinances regulating the speed of cars, were to pay a proportionate part of street paving in certain cases, were to pay, as a franchise fee, a certain annual percentage of the gross earnings, were not to charge beyond a certain price for illuminating gas and electricity, were to supply a certain amount of water free to the city for the purpose of flushing sewers, were to buy an ex-

isting gas and water plant if required by the city to do so, were
to hold the city harmless from all damages by reason of injuries
to person or property, caused by the laying of tracks, the making
of excavations, etc., and were to pay any judgment which might
be rendered against the city on any of these accounts, and were
to pay any damage that might be done to public sewers, water
mains, etc. There is no distinct covenant that the grantee shall
exercise the franchises granted, but it is provided, in section 8,
that "the rights, powers, franchises, and privileges herein granted
shall cease, determine, and be forever void, if the said Neff, his as-
sociates, successors, and assigns, fail to begin in good faith the con-
struction of said street-railway system within four months from the
date of the passage of this ordinance, and unless said Neff, his as-
sociates and assigns, shall, twelve months from such date, have
constructed and in operation at least four miles of such electric
street-railway system within the limits of said city, and the re-
mainder, if any, within thirty-six months after such date." Ample
provision was made for the forfeiture of the different franchises by
non-user or by failing to maintain the utilities contemplated. The
ordinance was conditioned that the rights and privileges granted
should not pass to the grantees until they signified their acceptance
in writing of the terms of the ordinance, in which event the ordi-
nance should have not only the force of law, but also the effect of
a contract. It was further provided that within four months there-
after the grantees should file with the mayor and council "a bond
in the *penal sum* of $10,000, assuring due and faithful perform-
ance of each and every covenant assumed to be performed by the
grantee herein." The Southern Electric Railway, Light & Water
Company filed its acceptance and gave the bond in the sum re-
quired, with the Ætna Indemnity Company as surety. The con-
dition of the bond is "that whereas the mayor and council of the
city of Brunswick, Georgia, on August 10, 1905, passed and adopted
an ordinance entitled 'an ordinance to grant unto J. H. Neff, his
associates, successors, and assigns, a right and franchise for the
operation of a street-railway system, electric light, gas, and water
plants in the city of Brunswick, Georgia, and for other purposes.'
and whereas said J. H. Neff has assigned and transferred to the
Southern Electric, Gas & Water Company, a corporation under
the laws of the State of Maine, all his rights and privileges and

franchises under said ordinance, a copy of which ordinance is attached hereto as a part hereof; now, therefore, if said the Southern Electric, Gas & Water Company, a corporation under the laws of the State of Maine, its successors and assigns, shall duly and faithfully perform each and every covenant assumed to be performed by the grantee in the aforesaid ordinance (except, however, that the aforesaid the Southern Electric, Gas & Water Company, its successors and assigns, shall be excused and relieved from the performance of any covenant or duty assumed under the terms of said franchises by the grantee, his associates, successors, and assigns, where performance is prevented by pending litigation or any order, decree, or judgment of a court of competent jurisdiction), then this obligation to be void, otherwise to remain in full force and effect."

The mayor and council brought the present action against the principal and surety in the bond, reciting the adoption of the ordinance, its acceptance by the Southern Electric, Gas & Water Company, and the giving of the bond in the terms mentioned above; also alleging that "among other things assumed to be done by the said J. H. Neff, his associates, successors, and assigns, in and under said ordinance and contract, and which became by his acceptance of such ordinance a covenant and duty to be performed by him, his associates, successors, and assigns, as set out in said ordinance, was that covenant, as stated in section 8 of said ordinance, that said J. H. Neff, his associates, successors and assigns, should begin in good faith the construction of said street-railway system, provided for in said ordinance, within four months from the date of the passage of the ordinance, and that said Neff, his associates, successors, and assigns, should, twelve months from such date, have constructed and in operation at least four miles of such electric street-railway system within the limits of said city of Brunswick, and the remainder, if any, within thirty-six months after such date." It is further alleged that without excuse, the grantees of the franchise have wholly neglected to build any and all of the street-railway. Another allegation of the petition is the following: "At the time of the giving of said bond, no actual damages were in contemplation of the parties thereto in case of any default on the part of said the Southern Electric, Gas & Water Company in the performance of any of the covenants or

conditions in said ordinance expressed. In fact, the actual damages sustained by petitioner by reason of the failure of said principal in said bond to carry out the terms of said ordinance are necessarily speculative and uncertain, if not absolutely incapable of proof, and such was known to be the case by the parties to the transaction when the bond was tendered and accepted, and therefore petitioner is entitled to recover from said defendants the full amount of said bond, to wit, ten thousand dollars, as stipulated damages for the breach thereof, with interest on said sum from the date of such breach, and from the failure of said principal to perform the first covenant which he was bound to perform under said ordinance, to wit, that of beginning in good faith the construction of said street-railway system in said city within four months after the passage of the ordinance." It is further alleged that, without excuse, the grantees of the franchise have wholly neglected to build any and all of the street-railway.

The Ætna Indemnity Company, the surety, filed a general demurrer, which the court sustained; and the city excepts.

*R. D. Meader, Francis H. Harris,* for plaintiff.

*Carl F. Dodd, Dodd & Dodd,* for defendant.

POWELL, J. (After stating the facts.)

1. In our opinion, construing the ordinance as a whole, it did not contain any covenant on the part of the grantees to exercise the street-railway franchise, but merely gave them an option to enjoy the privileges granted, on condition that the work should progress to the extent indicated within the time limited. However, since the stress of the argument—and the case was well and ably argued here—fell upon the points as to whether the sum expressed in the bond is liquidated damages or a penalty, and since we have come to the conclusion that upon the solution of this question the result will be the same, we have decided to rest our decision on this, rather than on the ground that the ordinance and contract between the parties did not create the covenant claimed.

It is conceded that the city has not sustained any actual damages of such nature as to be susceptible of proof and recovery in a court of law. The plaintiff rests its case, and of logical necessity must rest it, squarely upon the proposition that the sum specified in the bond is recoverable as liquidated damages,—as a sum estimated and fixed in advance by the parties, as representing fair

and just compensation to the obligee for those damages which naturally would be sustained by a breach of the contract, but which would probably be so speculative, uncertain, remote, or difficult of calculation as to render an ordinary action inadequate or unavailable. The contention of the defendant, of course, is that the $10,000 is merely a penalty; that this sum is named not to liquidate any damages, but to represent the maximum amount for which the surety would be bound toward the indemnification of the obligee against those actually legally computable damages it might sustain from any breach of the contract.

We note a marked custom among the judges who have had occasion to deal with the question as to whether a sum so named is a penalty or liquidated damages, to begin the discussion with some statement to the effect that the construction of such contracts presents a question of most vexing and perplexing nature; and in conformity to the custom we may as well make the same remark. However, looking to the nature of the whole contract as contained in the bond and the ordinance, and keeping in mind a few well-established rules of construction, we can not believe that it is seriously doubtful but that the amount specified in this contract is purely and solely the ordinary penalty usually found in bonds with conditions annexed. In the first place, section 21 of the ordinance, in requiring the bond, prescribes that it shall be in the "penal sum" of $10,000. This is evidentiary, though not controlling on the question. *Sanders* v. *Carter,* 91 *Ga.* 450 (17 S. E. 345).

2. Then, under the terms of the bond, the makers stand bound in the sum named unless the principal therein "shall duly and faithfully perform *each* and *every* covenant assumed to be performed by the grantee in the aforesaid ordinance." The rule is well recognized that a stipulation for the payment of a definite, unvarying sum, on the breach of any of several promises of varying degrees of importance, especially where the damages for the breach of some of them would be easily ascertainable, is to be construed as a penalty. *Swift* v. *Crow,* 17 *Ga.* 609; Wilhelm v. Eaves, 21 Or. 194 (27 Pac. 1053, 17 L. R. A. 297); Graham v. Bickham, 4 Dall. 143 (1 L. ed. 778, 1 Am. Dec. 328); Foley v. McKeegan, 4 Iowa 1 (66 Am. Dec. 107); Long v. Towl, 42 Mo. 545 (97 Am. Dec. 355). To quote from Bayley, J., in the case of Davis v.

Penton, 6 Barn. & Cress. (13 E. C. L. R.) 216, "Where the sum which is to be a security for the performance of an agreement to do several acts will, in cases of breaches of the agreement, be, in some instances, too large and in others too small a compensation for the injury thereby occasioned, that sum is to be considered a penalty." To the same effect are the oft-cited English cases of Kemble v. Farren, 6 Bing. 141 (3 M. & P. 425, 7 L. J. C. P. 258, 31 Rev. Rep. 366), and Horner v. Flintoff, 9 M. & W. 678. Looking to the writing before us, is it reasonable to presume that the parties intended that the obligors of the bond were to be liable for ten thousand dollars if the principal therein cut a shade-tree without permission, or refused to let a policeman ride free, or failed on some occasion to furnish the requisite amount of water to flush the sewers? And yet each and all of these are covenants assumed by the acceptance of the ordinance, and a failure as to any of them would as completely breach the bond as a failure to build and operate the street-railway within the time required.

3. Furthermore, where the stipulated sum which, by the agreement, is to be paid upon a breach of the contract is held to be a liquidation of the damages and not a penalty, it becomes the maximum, as well as the minimum, sum that can be collected, no matter how greatly, certainly, and definitely the obligee has been damaged by the breach or breaches. Foote v. Maloney, 115 Ga. 985 (42 S. E. 413); Swift v. Powell, 44 Ga. 123. For example, under the present contract the grantees of the franchise covenanted to indemnify the city against such claims for damages as might from time to time arise through acts of omission or commission in the exercise of the franchises. Now, if the amount to be recovered for each and every breach of the contract has been liquidated by the stipulation of the sum named, the obligors might be held liable for this amount for some minor violation, and thereafter could with impunity commit persistent, flagrant, and heavily damaging breaches without liability; in other words, could pay the ten thousand dollars and thereafter break the contract at will. They might leave excavations in the streets unguarded until the recoveries against the city by injured persons amounted to five times ten thousand dollars, might refuse to pay to the city the promised percentage of its gross earnings, might injure and damage the city's existing sewers and water mains at will, and yet,

having paid the sum stipulated and liquidated as covering each and every breach, they could suffer no further liability. This reductio ad absurdum finds a parallel in the case of Wilkinson *v.* Colley, 164 Pa. 35 (30 Atl. 286, 26 L. R. A. 115). The designation of a conventional amount will not be held to liquidate the damages, where it is apparent that it was not the intention of the parties that the obligor could escape further liability by paying that sum.

The foregoing canons of construction seem so clearly to control the present case as to render unnecessary any allusion to the doctrine that in cases of doubt the courts favor the construction which holds the stipulated sum to be a penalty, and limits the recovery to the amount of damage actually shown, rather than a liquidation of the damages. The court did not err in sustaining the demurrer.

*Judgment affirmed.*