### GEORGE W. MULLER BANK FIXTURE COMPANY et al. v. GEORGIA RAILWAY AND ELECTRIC COMPANY.

1. The disallowance of an amendment to an answer is not ground for a motion for new trial. *Norris* v. *Rawlings*, 138 *Ga.* 711 (76 S. E. 60); *Lee* v. *McCarthy*, 132 *Ga.* 698 (64 S. E. 997).

2. Where two corporations enter into a written contract whereby one agrees to furnish electric current at the factory of the other for a stated time at specified rates, and after the service has been supplied for a time the president of the company receiving the service writes to the other company a letter stating that "on account of excessive rates we are compelled to cut out the use of our motor at our factory; and from March 1st you will please understand that we are not using your current," the writer of the letter will not be heard, on the trial of a suit for breach of the contract, to contradict the import of the letter by testifying to his undisclosed intention in employing the words "excessive rates," as used in the letter. *Harris* v. *Amoskeag Lumber Co.*, 97 *Ga.* 465 (25 S. E. 519). See also *Cowdery* v. *Greenlee*, 126 *Ga.* 786 (55 S. E. 918, 8 L. R. A. (N. S.) 137).

3. Where a contract contains several stipulations, and provides for liquidated damages for breach of the contract, and the sum named in the contract as liquidated damages can apply to the breach of any stipulation of the contract, and it is apparent that the damages which could result from the breach of some of the stipulations would be so small as to make the stipulated amount excessive and unjust, this amount will be held to be in the nature of a penalty, and not liquidated damages.

JULY 12, 1916.

Action for breach of contract. Before Judge Pendleton. Fulton superior court. July 1, 1915.

The George W. Muller Bank Fixture Company, maintaining a place of business in the city of Atlanta, entered into two certain contracts with the Georgia Railway and Electric Company, a corporation which was engaged in supplying electricity for light and power. Both contracts were dated July 18, 1911, and service under each was to begin on August 1, 1911, and to continue for

two years next ensuing. The contract for lighting service specified that it was "for 30 16-candle-power lamps, which we agree to use during the term of two years beginning August 1, 1911, and pay therefor, on or before the 10th day of each month next succeeding that for which service is charged, ten cents per kilowatt hour for the first 150 kilowatt hours per month, and all in excess of 150 kilowatt hours per month at six cents per kilowatt hour, as may be shown by the statement of the meter. And if paid on or before the 10th day of each month, subject to ten per cent discount. In case the meter reading shows a consumption in value less than three and 33/100 dollars per month, we further agree to pay the sum of three and 33/100 dollars per month, subject to ten per cent. discount if paid on or before the 10th day of each month. The customer further agrees to use from the company under this contract all the electric current required for the lights and power called for above, and also all electric lights and power that are installed at above premises during the term of this contract. It is agreed that the wiring and electric equipment in said premises and to the point of connection with the system of the company, designated by it, shall be constructed and maintained by the customer in a condition satisfactory to the city authorities of the City of Atlanta and the inspection department of the company. And it is further agreed that no change or alteration shall be made in the number or wattage of the lamps, or number of horse-power, etc., or on wiring or equipment of the above-named premises, without first obtaining the written consent of the company. ———— further agrees to pay the company on demand ———— dollars for making connections to its distributing system. It is mutually agreed that the terms and conditions printed hereon are a part of this agreement. This proposal to form a binding contract upon the company when accepted in writing by the proper officer of the company, and no agreement or representation made by any representative of the company shall be binding upon the company unless incorporated in this proposal." The other contract, which was for power service, was in all respects similar to the above, except that it was provided that the current to be supplied was greater in amount and to be supplied at a greater cost, and was to be used in operating electric motors for the purpose of running woodworking machinery at the place of business of the consumer.

Among the "terms and conditions" printed on the back of each of the contracts were the following: "It is agreed that if the customer violates this contract, there shall immediately become due and payable as damages, not as penalty, first, the minimum payment named herein for the entire unexpired term of the contract or existing extension thereof; second, the construction expense incurred by the company upon the premises of the customer, including the connection to its street system." Other "terms and conditions" printed on the back of both of the contracts are as follows: "If a meter is installed to register the current used, and it should fail to register properly, the consumption will be averaged by another meter, or by the amount charged for a corresponding month. All lamps, meters, wires, and other appliances furnished by the company shall remain the property of the company. It is agreed that all wires upon the premises of the customer, to which the company's service will be connected, shall be so installed, changed, and maintained by the customer that the company may carry out this contract, and shall be kept in proper condition by the customer; that the customer will give or obtain all necessary permission to enable the agents of the company to carry out this contract, and to construct and maintain its service in and through all places required by the company, except public places; and to set up and maintain the necessary meters, converters, and appliances as located by the company. The customer also hereby gives permission to the company to connect any adjoining or neighboring buildings with the service on his premises, and to run wires and pipes on and through his premises and walls, and to enter the premises at all reasonable times, so long as any of the company's property remains therein, for the purpose of keeping in repair or removing its property or inspecting its own or the customer's wires or apparatus, and the customer will not permit such access, for said purposes, to parties other than its employees or the authorized representatives of the company, or persons duly authorized by law. In case the supply of electricity should be interrupted or fail by reason of accident or otherwise, such interruption shall not constitute a breach of this contract, nor shall the company be liable for damages by reason of such failure, or for damages or injury resulting from improperly installed or defective wiring or equipment or otherwise; and it shall in no case be a condition precedent

to the company's right to recover hereunder, to allege or prove that no interruption in the supply of electricity has occurred. The company, moreover, may discontinue service at any time without notice, whenever the customer has violated this contract, or any other contract for the supply of electricity existing between the parties hereto, or fail to pay any bill accruing under this contract on or before the 10th day of the month in which it becomes due, or if the customer shall neglect or refuse to pay promptly when due any sum which by the books of the company he may owe it for electric current or otherwise, and whether under this contract or otherwise, and whether as principal debtor or as joint debtor, or as maker, indorser, surety, guarantor, or otherwise; the customer however, shall not be relieved of his obligations under this contract, but the contract shall continue in full force. The company also reserves the right to shut off the supply of current for repairs or want of supplies. Inspectors, agents, or any employee of the company, are expressly forbidden to demand or accept any compensation for services rendered. Bills will be rendered monthly, unless otherwise specified, and must be settled at the office of the company, within the time specified in the contract. It is further agreed that all electric current required or used for any purpose at any time during the term of this contract or any renewal thereof, in or upon the customer's premises, and all extensions and enlargements thereof, shall be taken by the customer from the company. The customer will be responsible for all damages to, or loss of, the company's property located upon the customer's premises and used in carrying out this contract, unless occasioned by the company's negligence. . . The customer agrees not to supply electric current to any one else, or allow any one else to take same, and agrees that he will promptly notify the company of any ground on electric installation in his premises. In the event of the passage of any ordinance or law whereby the cost of furnishing the within-mentioned electric service is increased, then the company reserves the right to terminate this contract on thirty days' notice. . . Should the customer, during the term of this contract or any renewal thereof, take or use electric current from any other source than this company, then such customer agrees that he will pay to the company monthly, as additional liquidated damages, the sums that would have become due if such current had been

taken and used under this contract. This contract becomes operative on the day the customer is connected to the company's service for the purpose of taking electricity hereunder, and is for the term stated herein, and is to be considered renewed from term to term thereafter unless a written notice to the contrary is given by either party to the other at least thirty days prior to the expiration of the contract or any renewal thereof. The customer agrees that on demand of the company at any time during the term of this contract he will deposit with it, as collateral security for the performance of the terms of this contract by him, a sum equal to the average monthly bill hereunder."

Other "terms and conditions" contained on the back of the lighting-service contract, which were not contained among those on the power-service contract, were as follows: "It is agreed that the company furnish regular carbon filament, Standard Edison base clear lamps, from 2 to 32 candle-power, for renewals in place of unbroken lamp bulbs returned to the company; it is agreed that the customer shall pay the company for broken bulbs or lamps unaccounted for. In the event that the total wattage of the lamps covered by this contract is increased, the minimum payment and also the number of kilowatt hours to which the maximum rate will apply shall be increased in proportion."

Other "terms and conditions" contained on the back of the power-service contract which were not included in the conditions on the back of the lighting-service contract were: "In the event additional motors are added, or the connected horse-power increased, the monthly minimum payment, also the number of kilowatt hours to which the maximum rate will apply, shall be increased in proportion to the increased motor capacity. . . It is agreed that the current charged for at power rates will not be used either directly or by transformation for illuminating purposes."

On each of the contracts George W. Muller made the following indorsement: "I hereby guarantee the faithful performance of this contract and the payment of all bills accruing under same." After execution of the contracts the parties acted upon them, and the customer received at its place of business current from the electric company under both contracts. In July, 1912, the electric company instituted a suit against the customer and its guarantor, for a breach of each of the contracts. It was alleged, among other

things, with reference to each of the contracts, that the customer had complied with the obligations imposed upon it up to March 16, 1912, but on that day had breached the contract by refusing to take and pay for current as therein provided for, the plaintiff being at the same time able to supply the current according to the contracts, and tendering the same to the defendants. For breach of the contracts it was sought to recover, as stipulated damages, the minimum payment named in the contracts for the entire unexpired term of the contracts. The defendants admitted certain of the allegations, but denied all which charged that the defendants were liable in any amount on the contracts. In that connection it was alleged that the plaintiff had committed a breach of each of the contracts by refusing, without cause, to supply the current provided for; also that in order to comply with the contracts the defendants had incurred certain expenses in the installment of appliances and machinery, which, by reason of the refusal of the plaintiff to supply current as contracted for, could not be used, and that the defendants had sustained damages as a consequence, which they sought to set off. On the trial of the case a verdict was returned for the plaintiff for the full amount sued for. The defendants made a motion for new trial, which being overruled, they excepted.

*Lewis W. Thomas* and *Thomas H. Goodwin*, for plaintiffs in error. *Colquitt & Conyers*, contra.

ATKINSON, J. 1. The rulings announced in the first and second headnotes do not require elaboration.

2. The judgment, however, must be reversed upon one controlling question, which renders it unnecessary to deal with other questions. The plaintiff elected to sue for stipulated damages upon the authority of the provision of the contract which declared: "It is agreed that if the customer violates this contract, there shall immediately become due and payable as damages, not as penalty, first, the minimum payment named herein for the entire unexpired term of the contract or existing extension thereof; second, the construction expense incurred by the company upon the premises of the customer, including the connection to its street system." It was contended by the defendants that this provision of the contract was in the nature of a penalty and was not enforceable as a contract to pay fixed damages. If it was void, it could not be

the basis of a recovery.  In *Mayor &c. of Brunswick* v. *Ætna Indemnity Co., 4 Ga. App.* 722, 726 (62 S. E. 475), it was said by Powell, J.: "The rule is well recognized that a stipulation for the payment of a definite, unvarying sum, on the breach of any of several promises of varying degrees of importance, especially where the damages for the breach of some of them would be easily ascertainable, is to be construed as a penalty."  This pronouncement is but an application of the rule almost similarly expressed in *Swift* v. *Crow,* 17 *Ga.* 609.  The rule was also applied in *Floding* v. *Floding,* 137 *Ga.* 531 (75 S. E. 729), where it was held: "Where a contract contains several stipulations, and the sum named in the contract as 'liquidated damages' for a breach of the agreement can apply to the breach of any stipulation of the contract, and it is apparent that the damages which could result from the breach of some of the stipulations would be so small in comparison with the sum named as liquidated damages as to make the latter excessive and unjust, the amount of damages stipulated will be held to be in the nature of a penalty, and not 'liquidated damages.'"  Applying the rule to the present case, the provision of the contract quoted above, relied on as a basis for stipulated damages, when considered in connection with the various obligations imposed upon the customer by the terms of the contract, for the breach of any one of which it was stipulated that the plaintiff should have the right to sue for stipulated damages, it is manifest that the provision of the contract was an agreement for a penalty, and unenforceable.  As the suit was for stipulated damages based on the validity of that clause of the contract, it follows that the verdict for the plaintiff was unauthorized.

*Judgment reversed.  All the Justices concur.*