43914. SANDERS, Trustee v. CARNEY et al.

Argued September 10, 1968—Decided October 30, 1968.

*Powell, Goldstein, Frazer & Murphy, B. D. Murphy, Wayne Shortridge,* for appellant.

*Grant, Spears & Duckworth, Robert W. Spears, Hansell, Post, Brandon & Dorsey, F. Tread Davis, Poole, Pearce & Cooper, Walter G. Cooper,* for appellees.

PANNELL, Judge. The Citizens Bank of Hapeville brought a bill of interpleader against the Atlanta Times, Inc., and Robert D. Carney, tendering into court a sum of $25,000 held by the plaintiff under an agreement with the defendants about which there were conflicting claims. The prayers were that the parties be required to interplead and establish their claims to the fund. Attached to the petition was an employment agreement whereby the Atlanta Times, Inc., employed Robert D. Carney as advertising director for a period of two years beginning April 15, 1964, on a salary of $25,000 per year payable in cash in weekly or monthly instalments at the end of each week or month, at the option of the employee. There are other provisions of the contract not here material. This contract was dated March 16, 1964, on the same date an escrow agreement was entered into wherein the Atlanta Times, Inc., was designated as employer, Robert D. Carney as employee, and the Citizens Bank of Hapeville as escrow agent. This contract so far as here material reads as follows:

"Whereas, the employer and the employee have on the 16th day of March, 1964, entered into an employment agreement wherein the employee has been employed as Advertising Director for the employer for a term of two (2) years commencing as stated therein, a true copy of said agreement being attached hereto as Exhibit 'A' and by express reference made a part hereof; and

"Whereas, the employee wishes to have guaranteed the performance by the employer of the terms of said agreement with respect to the compensation to be paid him thereunder and the employer wishes to guarantee such compensation regardless of the continued publication of a daily newspaper, in order to induce employee to accept employment as Advertising Director of said newspaper; and

"Whereas, it is necessary that there be designated an agent for the purpose of holding the funds hereinafter recited to guar-

antee the employee's compensation under the terms of said employment agreement;

"Now, therefore, in consideration of the mutual covenants herein contained and further in consideration of the execution of the employment agreement attached hereto, and the performance of the services thereunder, it is agreed as follows:

"1. There shall be deposited with the escrow agent by the employer the sum of twenty-five thousand dollars ($25,000) in cash, to be held by the escrow agent for a term of two (2) years from the date hereof subject to all of the terms and conditions of this agreement, and except as hereafter provided.

"2. In the event the employer fails to commence publication of a daily newspaper as anticipated, or if publication once commenced is thereafter suspended, or if the employee is discharged from employment, or if for any cause whatsoever the employer fails to pay when due any instalment of employee's compensation as called for in the attached employment agreement, the escrow agent, within seven (7) days after written notification from the employee of the happening of such event, shall distribute to the employee, in the manner hereinafter provided, the sum of twenty-five thousand dollars ($25,000), less all fixed salary compensation actually paid to employee by employer during the second twelve-month period of the employment agreement. The salary records of the employer kept in the ordinary course of business shall be determinative of the amount of fixed salary which has been paid to the employee and the employer hereby agrees to deliver said records to the escrow agent, forthwith, upon demand being made therefor. The failure to deliver such records within seven (7) days after written request by the escrow agent shall be authority for the escrow agent to distribute the entire sum due employee by the employer.

"3. The escrow agent shall pay any amounts due to the employee under the provisions of paragraph 2 above in quarterly instalments over the remaining period of the term of the employment agreement attached hereto.

"4. Notwithstanding any of the foregoing provisions to the contrary the escrow agent, provided it has not received notifi-

cation from the employee of a default by the employer, shall begin releasing the escrow fund deposited herein in the amount of twenty-five thousand dollars ($25,000) as payment for salaries due the employee during the second yearly period of the employment agreement. Such amounts due during the second yearly period may be withdrawn from the escrow fund on the basis of weekly or monthly stipulated salary as provided in the employment agreement.

"5. It is contemplated that the sum placed in escrow hereunder shall draw interest at the rate of 3½%, per annum, and such interest shall belong to employer and be paid to employer at the end of each interest bearing period."

The employer contends that the escrow agreement is void because it provides for a penalty. The employee takes the contrary position. The evidence was undisputed that Carney had an excellent job in the advertising field with two concerns and that during the course of the negotiations he was asked how much it would cost to make him quit his present job and go with the Times, to which he replied, $25,000. As a result of the negotiations, the contracts above-mentioned were entered into.

The provisions in the escrow agreement are clearly intended to guarantee to Carney that he would receive two years employment, or the pay therefor, with the possibility, if the event occurred before the first year expired, that he would get less than two years pay, but would be entitled to the entire $25,000, plus what he had already been paid during the first year. In our opinion, the contract is not void as one providing for a penalty, as contended by the Atlanta Times, Inc., on the following grounds:

(a) There is no reasonable relation to the amount to be paid and any probable damages occasioned by the breach. See *Lamback v. City Council of Augusta*, 57 Ga. App. 691 (196 SE 294); *Miazza v. Western Union Tel. Co.*, 50 Ga. App. 521 (178 SE 764); *Florence Wagon Works v. Salmon*, 8 Ga. App. 197, 200 (68 SE 866); *Floding v. Floding*, 137 Ga. 531, 536 (73 SE 729). The damages occasioned here are not only the damages relating to the failure to pay the salary agreed, which

might be lessened by other earnings of the employee, but included the additional damage resulting from the termination of the former employment.

(b) The amount to be paid is fixed and unvarying even though the events of breach are of varying degrees of importance. See *Mayor &c. of Brunswick v. Aetna Indem. Co.*, 4 Ga. App. 722, 726 (1) (62 SE 475). The breach here contemplated (while occurring for different reasons) is the failure to pay the agreed salary for the term of the two-year contract. Promises of varying degrees of importance are not involved but only a breach of the employment according to the contract which breach may vary in importance depending upon the time it occurs, not in the manner in which it occurs.

(c) Because the amount to be paid is one unvarying regardless of the time of the breach. See *Lamback v. City Council of Augusta*, 57 Ga. App. 691, supra. As to the time of the breach during the first year of the two-year contract, this is true, but this merely compensates for the second year's failure to employ, and leaves the remainder of the first year not compensated. As to the breach occurring during the second year of the contract, the payment varies as to the time of the breach.

Aside from these considerations, we agree with what was said in Carney v. Sanders, 381 F2d 300, 301, in referring to Carney: "The appellant was happily and securely employed as an advertising representative when he was offered the position of advertising director by the Atlanta Times, Inc., on a daily newspaper it was planning to publish in Atlanta. It took considerable urging to get him to terminate his connections with established firms for a position with a fledgling newspaper; but an offer was finally made that he agreed to accept." The agreement here does not purport on its face to provide a penalty but merely to provide security for the performance of the contract on the part of the Atlanta Times, Inc., so that in the event of a breach he would be compensated for having resigned his prior employment. The damages under such circumstances would be difficult of ascertainment. As was said in *Sanders & Ables v. Carter*, 91 Ga. 450, 454 (17 SE 345): "That the parties agree to deposit a specified sum as security for per-

formance, using language which imports an understanding that upon a breach the holder is to pay such amount over to the injured party without further formality, will generally be held decisive of the intent to stipulate for liquidated damages. Other considerations of equal weight may often turn the scale. But the courts lay great stress upon the importance of considering, in connection with the instrument itself, the subject matter of the agreement and all the attendant circumstances of its execution. The matter for adjustment may be such that, in the event of a breach, the damages resulting therefrom would be difficult to readily or accurately ascertain or approximate. It is apparent this is of signal importance, for in such case it may very reasonably be presumed that the parties had in contemplation the uncertainty in this regard, and agreed upon the sum stipulated with the special end in view of obviating all future difficulty arising therefrom. It might be, also, that the party injured would sustain damages not susceptible of computation in dollars and cents, by reason of a peculiar interest in the performance of the agreement not applicable to one otherwise situated. All these, and other circumstances, the court will carefully pass upon. And of course, in determining whether the amount stipulated as a forfeiture is reasonable, and not disproportionate to the damages which would necessarily flow from a failure of performance, the relation of the parties one to the other, their peculiar situation, the absence or presence of fraud or oppression, and the purpose the agreement seeks to subserve, will in every instance furnish valuable assistance in reaching a fair and just conclusion."

The amount established here as liquidated damages for the breach was not shown to be per se grossly disproportionate to the breach and the damages occasioned thereby nor was there present any fraud or oppression. *Mayor &c. of Washington v. Potomac Engineering & Constr. Co.*, 132 Ga. 849 (65 SE 80); *Martin v. Lott*, 144 Ga. 660, 663 (87 SE 902); *Tuten v. Morgan*, 160 Ga. 90 (2) (127 SE 143); *Gleaton v. Fulton Bag &c. Mills*, 5 Ga. App. 420 (63 SE 520); *National Manufacture &c. Corp. v. Dekle*, 48 Ga. App. 515, 522 (2) (173 SE 408); *Code* §§ 20-1402; 20-1403.

*Judgment affirmed. Jordan, P. J., and Deen, J., concur.*