### 50475. ATLANTA BOARD OF EDUCATION et al. v. OXFORD BUILDING SERVICES.

PANNELL, Presiding Judge.

Oxford Building Services, Inc., brought an action against the Atlanta Board of Education seeking recovery of an alleged balance due for janitorial services and

supplies from "on or about July 24, 1968, through on or about August 27, 1971." By stipulation of the parties, the amount, the buildings and the contracts involved were agreed upon as hereinafter shown in the trial judge's order to whom the case was submitted for trial without a jury. The controversy arises out of three types of contracts between the parties referred to as the five percent contract, the two percent contract, and the "formula" contract. We are not concerned with the formula contracts on the present appeal.

The question is whether these contracts, in providing a method of arriving at damages for a breach by the appellee was a provision for liquidated damages, which are recoverable by the appellant, or was a penalty, which is not recoverable by the appellant as against the appellee's claim for janitorial services and supplies. See generally *Sanders & Ables v. Carter,* 91 Ga. 450 (17 SE 345); *Tuten v. Morgan,* 160 Ga. 90 (127 SE 143); *Muller Bank Fixture Co. v. Georgia R. &c. Co.,* 145 Ga. 484 (89 SE 615); *Sanders v. Carney,* 118 Ga. App. 576 (164 SE2d 856); *Mayor &c. of Washington v. Potomac Engineering &c. Co.,* 132 Ga. 849 (65 SE 80); *Heard v. Dooley County,* 101 Ga. 619 (28 SE 986); *Mayor &c. of Brunswick v. Aetna Indemnity Co.,* 4 Ga. App. 722 (62 SE 475); *Miazza v. Western Union Telegraph Co.,* 50 Ga. App. 521 (178 SE 764); *Ocmulgee Building &c. v. Thomson,* 52 Ga. 427.

The five percent contracts under "Reports and Payments" read: "The Contractor shall maintain a Performance Chart in duplicate, listing by room all of the periodic work required under this contract, and this chart shall be posted daily showing the work performed and the date of performance. The Performance Chart shall be subject to an inspection by the Supervisor at any time. At the end of each calendar month a duplicate of the completed Performance Chart shall be certified to by the foreman and Chief Officer of the contractor with a statement that, 'I certify the above to be true and correct.' The certified Performance Chart shall be submitted to the Supervisor, together with an invoice for payment for work performed during the month.

"Upon receipt of the certified chart and invoice, a representative of the Supervisor, in company with the

contractor or an authorized representative, shall make thorough inspection of the buildings involved, and if it is found that the contractor has failed to carry out any provisions of the contract, the contractor will be notified of such failure and be given 24 hours from the time of notice to make the necessary corrections. If work found to be in default under this contract is not corrected to the satisfaction of the supervisor within 24 hours, the Atlanta Board of Education shall charge against the contractor damages in an amount equal to 5 per cent of the amount invoiced for monthly services for each additional 24 hours that the contractor fails to perform the work required.

"No payment shall be made to the contractor on the invoice submitted for service for the previous month until all terms of this contract have been complied with, and then such payment shall be limited to the amount remaining as due on the invoice after the deduction of damages provided herein.

"Payment on the invoice shall also be subject to cancellation provisions set forth elsewhere in these specifications."

The two percent contracts under "Reports and Payments" read: "The Contractor shall maintain a negative Performance Chart in duplicate, supplied by the Operations Department, listing by general areas all of the periodic work required under this contract, and this chart shall be posted daily showing the work performed and the date of performance. The Performance Chart shall be subject to an inspection by the supervisor at any time. At the end of each calendar month a duplicate of the completed Performance Chart shall be certified to by the Foreman and Chief Officer of the contractor with a statement that 'I certify the above to be true and correct.' The certified Performance Chart shall be submitted to the Supervisor, together with an invoice for payment for work performed during the month.

"Whenever a representative of the Department of Operations of the Atlanta Board of Education shall make a thorough monthly inspection of the buildings involved, and if it is found that the contractor has failed to carry out any provisions of the contract, the contractor will be notified of such failure and be given 24 hours from the

time of notice to make the necessary corrections. If work found to be in default under this contract is not corrected to the satisfaction of the Director of Operations within 24 hours, the Atlanta Board of Education shall charge against the contractor damages in an amount equal to two (2) percent of the amount invoiced for monthly services for each additional 24 hours that the contractor fails to perform the work required.

"When it is determined that the contractor has omitted or failed to perform any daily scheduled work in accordance with these specifications the Director of Operations will immediately notify the contractor of the condition and location of the deficiency. Contractor will then be allowed three (3) hours to make the correction. Should the contractor fail to complete all work or respond to the notification within the time allowed then the Director of Operations may have said work performed by Atlanta Board of Education personnel and charge back to the contractor all costs incurred.

"No payment shall be made to the Contractor on the invoice submitted for service for the previous month until all terms of this contract have been complied with, and then such payment shall be limited to the amount remaining, as due on the invoice after the deduction of damages provided herein.

"Payment on the invoice shall also be subject to cancellation provisions set forth elsewhere in these specifications."

After hearing evidence on the circumstances surrounding the provisions of the contracts, which development received input from the bidders when the original contracts (five percent) were bid, as well as when the two percent contracts were substituted for the five percent contracts, and after considering numerous letters of default written to the appellee, and that where a notice of default was given and not corrected in twenty-four hours another notice was sent, and was sent each day thereafter until full compliance with the defects pointed out in the default letter had been met, the trial judge entered the following order:

"The above and foregoing case having come on for a trial before the Court, without a jury, evidence was

introduced and argument made by attorneys for both parties and the Court makes the following findings of fact and conclusions of law.

Findings of Fact

"1. That the parties and the subject matter of this law suit are subject to the jurisdiction of this Court.

"2. That beginning in July, 1968, the Plaintiff entered in several contracts with Defendant agreeing to provide specified janitorial services in certain public schools operated by Defendant for a fixed price payable monthly. The contracts covered a three-year period and school buildings involved in this law suit are Therrell High School, Douglass High School, Southwest High School, Kimberly Elementary School, Miles Elementary School, Adamsville Elementary School, and Walden Middle School.

"3. All of the contracts contained a provision under heading 'Reports and Payments' authorizing the Defendant to assess damages in particular amounts for each 24-hour period. That work of the Plaintiff was found to be in default and not corrected after a 24-hour notice.

"4. That the contracts contained the following procedure for the assessment of damages:

" 'Upon receipt of the certified chart and invoice, a representative of the Supervisor, in company with the contractor or an authorized representative, shall make a thorough inspection of the buildings involved, and if it is found that the contractor has failed to carry out any provisions of the contract, the contractor will be notified of such failure and be given 24 hours from the time of notice to make the necessary corrections. If work found to be in default under this contract is not corrected to the satisfaction of the Supervisor within 24 hours, the Atlanta Board of Education shall charge against the contractor damages in an amount equal to 5 percent of the amount invoiced for monthly services for each additional 24 hours that the contractor fails to perform the work required.'

"5. That the contracts in question contained the same or similar provisions, except that there were three different formulas for damages in different contracts as follows: (a) Five (5%) per cent of the amount invoiced for

monthly services for each additional 24 hours of default; (b) Two (2%) percent of amount invoiced for monthly services for each additional 24 hours of default; (c) The formula method provided that specific amounts be assessed for specific defaults, not to exceed 1/22 of the monetary amounts in any 24-hour period.

"6. That` over the period from July, 1969 to December, 1971, following inspections by Defendant's representatives, the Plaintiff was presented numerous deficiencies or 'penalty' letters, setting forth complaints about janitorial service in various schools.

"7. Based on a 36-month period, the following is a list of the amounts paid and damages withheld under the various methods set forth in the contracts:

| School | Total Billed | Damages withheld | Method of Deductions |
|---|---|---|---|
| Therrell | $171,251.02 | $17,600.87 | 5% |
| Douglass | $175,895.28 | $4,000.77 | 5% |
| Kimberly | $54,044.64 | $3,602.89 | 5% |
| Miles | $59,940.72 | $728.99 | 5% |
| Southwest | $105,840.00 | $2,734.37 | 2% |
| Walden | $82,260.00 | $319.90 | 2% |
| Adamsville | $56,568.60 | $686.08 | Formula |

"8. That the total amount assessed as damages against the Defendant for the whole period is $29,673.87 and this is the amount being claimed by the Plaintiff in this law suit.

"9. That the contracts contained provisions allowing either party to cancel the same on a 15 day written notice, the exact language: 'The term of the contract shall be for a period of 3 years, provided that either party may cancel the contract any time on 14 days written notice.'

"10. That the Plaintiff did not cancel any of the contracts until November, 1971, and in fact the evidence shows no written protest against the assessment of damages until late 1971, indicating that the Plaintiff acquiesced in the damage arrangement until that year.

"11. That although damages in the type of contracts involved are not readily ascertainable, the 5% provision was an excessive and unreasonable amount and as shown

by the evidence presented was in some instances misapplied.

"12. That under the evidence presented, the Court finds that the Plaintiff was on many occasions in breach of its obligations under the 5% contracts, as evidenced by the testimonies of Taylor and Ramsure, and the many notices of default, reinspections, and follow up letters to the Plaintiff.

"13. The Court further finds that the evidence presented at the trial is insufficient to support a finding or a method of calculation of Defendants' actual damages.

"14. That the 2% provision as to the assessment of damages is not excessive and unreasonable as to the amount itself, taking into consideration the amount involved, the intentions of the parties, the difficulty as to the ascertainment of actual damages and the like.

"15. The Court further finds that the 2% damage provision might be subject to unreasonable application when enforced over an extended period of time without regard to the quantum of breach by the Defendant. Court finds that an extended period of time regarding the contracts in question would be a period of more than 15 days. Two schools, Walden and Southwest were under the 2% provision. The Court finds that the evidence submitted as a part of Defendant's Exhibit 9 as to the Walden School shows no unreasonable application of the provision. Court finds that only for a 6 day period, April 7th to April 13th, that this provision was applied in an unreasonable manner regarding Southwest High School and that the amount to be deducted therefor is $352.80, being 2% x $2,940.00. Reference is made to Defendant's Exhibit 7.

"16. Court further finds that the Formula method for the assessment of damages is a fair and reasonable method, taking into consideration the intention of the parties and the difficulty of ascertaining damages.

Conclusions of Law

"1. Based on the finding above that the 5% damage provision is an excessive and unreasonable amount and subject to misapplication, it is concluded as a matter of law that this provision is a 'penalty' and not legally enforceable. *Miazza v. Western Union Telegraph Com-*

*pany,* 50 Ga. App. 521; *Muller v. Georgia Railway and Electric Company,* 145 Ga. 484; *Sanders & Ables v. Carter,* 91 Ga. 450.

"2. Where a stipulated damages clause is declared to be unenforceable as a penalty, the party seeking to enforce the contract is entitled to recover actual damages as shown by the evidence. *Dart v. Southwestern Building and Loan Association,* 99 Ga. 794; *Mayor of Brunswick v. Aetna Indemnity Company,* 4 Ga. 722. The evidence being insufficient to show the amount of damages actually sustained by the Defendant, the Court is without a foundation upon which damages might be assessed. Nominal damages would not be available to the Defendant in this case as the Defendant is not a party seeking a claim for damages. See Georgia Code Section 20-1409.

"3. The Defendant in a suit on a contract or account may set off against any award in favor of the Plaintiff any partial failure of consideration on the part of the Plaintiff but the evidence must be sufficient to show the amount to be set off. *Anchor Sign Company of Georgia, Inc. v. PS Heating & Air Conditioning Company,* 127 Ga. App. 207.

"4. Based on the finding that the 2% damage provision was not unreasonable in terms of the amount itself, the Court concludes as a matter of law that this provision is not a penalty provision and is thereby enforceable. *Sanders & Ables v. Carter,* 91 Ga. 450; *Mayor and Council of Washington v. Potomac Engineering,* 132 Ga. 849.

"5. Court further concludes that the 2% damage provision is subject to unreasonable application when enforced over an extended period of time without regard to the quantum of breach of duties by the Plaintiff, and when so applied it becomes a penalty. See Corbin, *Contracts,* Vol. 5, Section 1072 ('Liquidated Damages'). pages 407-408, and cases cited in footnotes 15 and 16 under Section 1072.

"6. Based on the finding that the Formula method of assessing damages is fair and reasonable, Court concludes as a matter of law that it is not a penalty and is hereby enforceable. *Sanders & Ables v. Carter,* 91 Ga. 450.

### Judgment

"Based on the findings of fact and conclusions of law set forth above, it is hereby considered, ordered and adjudged that judgment be rendered in favor of the Plaintiff and against the Defendant in the amount of $26,286.32, plus costs of Court.

"This 18th day of November, 1974."

We have carefully examined the evidence in the record before this court and the authorities cited by both parties and have reached the conclusion that under the evidence, the trial judge was authorized to reach the judgment complained of. We therefore affirm the judgment.

*Judgment affirmed. Quillian and Clark, JJ., concur.*

ARGUED APRIL 8, 1975 — DECIDED OCTOBER 17, 1975.

*Lenwood A. Jackson,* for appellants.
*Clein & Babus, Harvey A. Clein,* for appellee.