## THE BELLE GREENE MINING COMPANY *vs.* TUGGLE.

1. A motion to dismiss a bill in equity because there is a complete remedy at law comes too late when made at the trial term.

2. A bill alleged as follows:   Complainant bought a tract of land containing two hundred acres, less one acre reserved by the vendor. The latter also reserved the right to all ores, minerals, etc., on the land, and the privilege of having the entire tract reconveyed to him or his assigns upon giving twelve months' notice and paying a certain specified amount.   The defendant to the bill purchased the one acre and the privileges reserved by the original vendor, and began a mining business.   It became necessary to carry on the work for defendant to have about five acres of the land contiguous to its mine; but complainant refused to convey it unless defendant would

take the whole tract. This defendant agreed to do upon the terms specified in the deed to complainant, and took possession of the five acres. Complainant had begun making improvements which he discontinued after the trade. At the time specified he offered to make the conveyance, but defendant failed to comply with its contract, and this bill was brought for specific performance.

*Held*, that there was equity in the bill.

3. Where written contracts are clear and unambiguous, parol testimony as to the understanding of the parties is not admissible.

4. Where one who agreed to purchase land and take title thereto at a certain time, and who actually made use of a part of it, failed to comply with the contract, the right of the vendor to specific performance is not lost by the fact that he remained in possession after such failure, being ready to make the conveyance when the contract should be complied with.

5. The verdict in this case could not be otherwise than it was.

Equity. Practice in the Superior Court. Specific performance. Contracts. New Trial. Before Judge SNEAD. Richmond Superior Court. October Term, 1879.

Tuggle filed his bill against The Belle Greene Mining Company to compel the specific performance of a contract by it to purchase certain land. The material allegations of the bill are stated in the second head-note. The main point of contest was whether the defendant was bound to buy the land or had the privilege of buying if it so desired, and whether complainant had so conducted himself as to be entitled to specific performance. The answer is not material to an understanding of the points decided; nor is the evidence, other than the following: The contract between the company and Tuggle was as follows:

"STATE OF GEORGIA—Greene County.

" I hereby permit the Belle Greene Mining Company, now operating in what is known as copper mine tract, in said county and state, and which Company is now at work on one acre, owned by said Company, to extend their occupation over five acres adjoining said one acre, in order that said Company may build, improve and occupy fully the said additional five acres with the view that said Company are from this

date bound to pay the fixed price for the two tracts of land on which said copper mine is situated by the original deed, and by the time specified therein, namely, twelve months from this date.

"The within contract binds both the parties, that is, The Belle Greene Mining Company and the said William Tuggle.

"In witness whereof we have hereunto set our hands and seals, this 29th October, 1873.

[Signed]    WILLIAM TUGGLE,

W. H. WARREN,

*President Belle Greene Mining Company.*"

Test, P. H. MELL, JR.

The following is an extract from the minutes of the company :

"BELLE GREENE MINES, October 29, 1873.

"A meeting of the president and board of directors was this day held, all the members being present. Various matters regarding the general interest of the Company and the progress of work at the mines was considered, and the following resolution was offered by Col. Clark, and adopted :

"*Resolved,* That the president at once proceed to purchase    *    *    * (certain named articles).

"Judge William Tuggle was formally notified to-day that the Company would take his one hundred and ninety-nine acres of land, and pay for the same by, or before, the expiration of twelve months from date of notice. The privilege was granted in writing by Judge Tuggle the use of five acres of ground adjoining the mines. Without further business the meeting adjourned.

[Signed]    W. H. WARREN, *President.*"

Complainant's son testified that he, as agent of his father, notified the company that complainant was ready to comply with his contract, and demanded or requested compliance by company. Defendant's president promised to comply. He said the company did not have the money, and if he had the means he would pay it himself; said he hoped by the next fall to be able to meet the indebtedness.

It appeared also that after the twelve months expired Tuggle continued in possession of the land. He also testified to damages resulting from his ceasing to improve the place, etc. The original deed to Tuggle and numerous letters were in evidence.

The jury found for the complainant. Defendant moved for a new trial on the following, among other grounds:

(1.) Because the court erred in refusing to dismiss said bill on defendant's motion, for want of equity.

(2.) Because the court erred in refusing to dismiss said bill, upon defendant's motion, on the ground that, upon the facts alleged therein, complainant was not entitled to specific performance, and that no decree could be rendered upon the allegations therein contained.

(3.) Because the court erred in ruling out the following testimony of W. W. Clark and J. S. Hamilton:

Clark: "Witness cannot say, but thinks that the original, of which there is a copy attached (instrument of October 29th, 1873), was written by him. The object of the paper was to obtain possession of a few acres of land adjoining the land in Greene county, and was notice that The Belle Greene Mining Company would be entitled to the entire tract of land on which the mine was situated, by complying with the terms of the deed."

Hamilton: "The purpose of the instrument of October 29th, 1873, was to extend their occupation over five acres of land, adjoining the one acre owned by the company, in order that the said company might improve, build and occupy the additional five acres, or so much thereof as they might require for mining purposes, operatives' houses, stables, cribs, etc. I hardly know what the understanding was as to the effect of said paper by the parties signing it. On the part of the company, it was their intention not to be bound absolutely to take the land, unless the testing and developments should warrant the purchase."

Clark: "One of the managers and acting attorney said he could draw such a paper, and it was left with him to draw."

(Other testimony concerning the understanding of the parties was also offered and rejected).

(4.) Because the court erred in refusing to charge the

jury as requested by defendant: "That if the jury believe that upon the expiration of the twelve months named in the instrument of October 29th, 1873, and the failure of defendant to pay or tender payment and demand a deed to the land, that the complainant treated said instrument as not further binding on him, and continued to occupy and rent the land as his own, then there can be no recovery by complainant in the action."

The motion was overruled and defendant excepted.

H. CLAY FOSTER, for plaintiff in error.

J. C. C. BLACK, for defendant.

JACKSON, Chief Justice.

1. The motion to dismiss the bill because the remedy at law was complete was made at the trial term, and came too late. To oust equity of jurisdiction on this ground and turn the complainant over to law, a demurrer must be filed at the appearance term, 60 *Ga.*, 627 ; 61 *Ga.*, 33.

2. But there is equity in this bill. Certain improvements contemplated and commenced by the complainant were suspended by the contract of defendant to buy his land, and damages could not be well ascertained in money. The vendor sold part of his land on condition that the vendee would take the other part at a fixed price at the end of twelve months. The trade was one. The consideration was for the entire land contracted for. On the faith of the contract—the entire contract—the defendant got part of complainant's land, valuable for mining, and. then tried to get out of taking and paying for the part not so valuable for mining, but which it was constrained to agree to take in order to possess the four or five acres that the company really wanted. It seems to us to be a clear case for specific performance. The evidence is all in writing and beyond dispute. It appears in the written contract and on the minutes of the company itself, and where

such is the case specific performance will be decreed by a court of equity just as certainly as damage would be awarded at law, 17 *Ga.*, 142 ; 48 *Ib.*, 404; 51 *Ib.*, 47. Of course, if the law courts and remedies were adequate, and at the proper time defendant required complainant to go there without delaying him unnecessarily, there he must go and get the damage assessed, but if he be not pointed to that forum at the first term, he may abide in the court of chancery and there will get damage if adequate and ascertainable, or a decree for specific performance if such be the more perfect remedy for his wrongs.

3. The writings are full and unambiguous, and must mean what the words written indicate, and the court will give them that meaning without regard to the understanding of the agents of one party or both parties even. Parol testimony may explain written terms when doubtful, and if those terms do not show a clear meaning, the understanding of the parties may be shown outside to ascertain the meaning; but where the contract is not cloudy but all light, it were folly to attempt to make it shine by lesser lights. Where the sun is shining gas is useless.

Therefore the court was right to reject the parol testimony of Mr. Clark and Dr. Hamilton.

4. The court was right to refuse to charge as requested, even if the request had been in writing.

If defendant would not enter on and pay for the land, what was complainant to do? It would be strange to say that he forfeited the interest he had in the contract to give the other party possession on his paying for it, because when the other refused to go into possession or to pay for it, he kept it until it was paid for—offering all the time to give possession the moment the other side was ready to do its part.

5. Taking the case altogether, it strikes us as full of equity and the verdict and decree are demanded by the facts. Even if errors were made, they would not require the case to be remanded ; for the result must be the same.

The president of the company would have carried out the contract individually if he could, and all sorts of promises were made to do so.   There was no fraud on the part of complainant, but the trade was fairly made with all eyes open, and to such bargains all persons, artificial as well as natural, must stand.

Judgment affirmed.