23171.   NATIONAL MANUFACTURE & STORES
CORPORATION *v.* DEKLE.

516

DECIDED FEBRUARY 15, 1934.

518

*Adams, Adams & Douglas, Harold Hirsch, Marion Smith, W. B. Cody,* for plaintiff in error.

*Kennedy & McWhorter,* contra.

JENKINS, P. J. 1. "It is rudimentary law that parol evidence can not generally be admitted to contradict or vary the terms of a written contract. . . But if the writing is ambiguous, evidence is admissible to explain the ambiguity. Or if the writing does not purport to contain all the stipulations of the contract, parol evidence is admissible to prove other portions thereof not inconsistent with the writing." *McCommons* v. *Williams,* 131 *Ga.* 313, 318 (62 S. E. 230) ; Civil Code (1910), §§ 5788-5791. A contract free from ambiguity is conclusively presumed to express the intention of the parties. Civil Code, § 4266; *Crawford* v. *Cathey,* 143 *Ga.* 403, 405 (85 S. E. 127); *Blakely Oil Co.* v. *Proctor & Gamble Co.,* 134 *Ga.* 139 (67 S. E. 389); *Belle Green Mining Co.* v. *Tuggle,* 65 *Ga.* 652, 657; *Foote & Davies Co.* v. *Southern Wood Co.,* 11 *Ga. App.* 164, 166 (74 S. E. 1037); *Rich* v. *Rawleigh Co.,* 47 *Ga. App.* 571, 574 (171 S. E. 228). And even if the instrument is ambiguous, the testimony of one party as to his intent, undisclosed to the other, is not competent. *Read* v. *Gould,* 139 *Ga.* 499 (3, *a, b*) (77 S. E. 642) ; *Rich* v. *Rawleigh Co.,* supra. But in the construction of ambiguous contracts, the circumstances are subjects of proof. Where the language of the written instrument "may be fairly understood in more ways than one, it should be taken in the sense put upon it by the parties at the time of its execution, and the court will hear evidence as to the facts and surroundings." *Armistead* v. *McGuire,* 46 *Ga.* 232; Civil Code, § 4267.

2. "As a general rule, the construction of a contract is a question for the court; but where the terms of a written instrument are ambiguous, its meaning should be left to the jury." *Illges* v. *Dexter,* 77 *Ga.* 36; *First Nat. Bank of Sparta* v. *Hancock Warehouse Co.,* 142 *Ga.* 99, 104 (5) (82 S. E. 481) ; *Dwelle* v. *Blackwood,* 106 *Ga.* 486, 489, 490 (32 S. E. 593) ; Michie's Code, § 4265, notes.

3. An indefinite hiring may be terminated at will by either party. Civil Code, § 3133. Unless there is something to the contrary in an express contract of employment, a provision merely for the payment of wages at a stipulated period raises the presumption that the hiring was for that period. A person who has been previously employed by the year or other fixed interval, and who is

permitted to continue in the employment after the period limited by the original employment has expired, "will, in the absence of anything to show a contrary intention, be presumed to be employed until the close of the current interval, and upon the same terms." Such a presumed renovation of the contract from the period at which the former expired "is held to arise from implied consent of the parties, and in consequence of their not having signified their intention that the agreement should terminate at the period stipulated. . . Whether the first hiring has its duration fixed by express or implied contract, if it be fixed in either way, the term (if not longer than one year) admits of duplication by tacit as well as express agreement." *Standard Oil Co.* v. *Gilbert,* 84 *Ga.* 714 (11 S. E. 491, 8 L. R. A. 410); *Lentz* v. *City Council of Augusta,* 48 *Ga. App.* 555 (173 S. E. 406); 18 R. C. L. 533 (§ 47). Where the original instrument creating the employment is ambiguous as to whether the hiring was indefinite and determinable at the will of the employer upon compliance with an expressed condition, or was for a definite period, a determination of the question would be for the jury.

4. "Damages are given as compensation for the injury sustained. If the parties agree, in their contract, what the damages for breach shall be, they are said to be liquidated, and unless the agreement violates some principle of law, the parties are bound thereby." Civil Code, § 4390. "Penalties in bonds are not liquidated damages; and even if called such, yet, if it appears unreasonable and not so actually intended by the parties, the law will give only the actual damages, and in all cases where the damage is capable of computation, and is not uncertain in its character, such stipulations will be declared to be penalties." Civil Code, § 4391; *Heard* v. *Dooly County,* 101 *Ga.* 619, 626 (28 S. E. 986). The question as to whether an amount provided in a contract to be paid in case of its breach is liquidated damages or a penalty is often difficult of determination; but the cardinal tests are the intention of the parties and the reasonableness or unreasonableness of the amount fixed, according to the certainty and ease or the difficulty in ascertainment of the actual damages, and according to the similarity or disproportion between the amount provided and the actual or probable loss. See *Lee* v. *Overstreet,* 44 *Ga.* 507, 508; *Mayor &c. of Brunswick* v. *Ætna Indemnity Co.,* 4 *Ga. App.* 722 (2), 726-(62

S. E. 475) ; 8 R. C. L. 560, 565-569. If the actual damages are uncertain and difficult to ascertain or prove, and the contract furnishes no data for their ascertainment, the provision will, as a rule, be held to be one for liquidated damages, if the amount is not unreasonable. But if the actual damages are capable of exact computation under the contract and the legal rule for their measure, a stipulation for an amount in excess of such damages will generally be deemed a penalty. *Lytle* v. *Scottish American Mortgage Co.*, 122 *Ga.* 458 (8, 9), 466, 468 (50 S. E. 402) ; *Lee* v. *Overstreet,* 44 *Ga.* 507; *Sanders* v. *Carter,* 91 *Ga.* 450, 452-457 (17 S. E. 345) ; 8 R. C. L. 569, 570. See also *Foote & Davies Co.* v. *Malony,* 115 *Ga.* 985 (42 S. E. 413).

5. In the instant suit by an employee to recover from his employer two monthly salary installments of $300 each, accruing after his alleged illegal discharge without cause, the jury returned a verdict for the amount sued for. The defendant excepted pendente lite to the overruling of its demurrers to the amended petition; and excepted upon general and special grounds to the denial of its motion for new trial. Applying the foregoing principles of law to the pleadings and the evidence :

(*a*) The plaintiff employee must recover, if at all, upon the implied renewal from year to year of the original express written contract as stated in the amended option given by the plaintiff to sell his furniture business for an agreed price, to be paid partly in cash and partly in "Class A" stock as described of the par value of $100 a share, which contract contained the agreement not only for the employment of the plaintiff as manager, but an agreement that the purchaser would assume the plaintiff's lease, and that the plaintiff would not engage in a similar business for ten years within 200 miles "except as might or may be in connection with the purchaser herein." An amendment to the option provided that "the purchaser agrees to employ the seller as manager of the business at Savannah at an annual salary of not less than $3,600, payable in monthly installments of $300 each, and agrees also that, in event the seller at any time during such period is relieved of his duties as such manager without cause, to buy his 150 shares of Class A stock in the proposed corporation for cash at and for the purchase-price of $101 per share;" and that this agreement for employment was "to be part and parcel of and predicated

upon the same consideration as the agreement of bargain and sale of said business and assets this day executed." The petition was based upon the written contract. The amendment set forth that the considerations moving the sale of the business by the plaintiff was the agreed payment of cash and delivery of the stock for the purchase-price, the assumption of the lease, and the employment of the plaintiff. The original contract creating the employment being express and in writing, any implied renewal thereof from year to year as to the employment would not give to the employee the right to recover salary independently of the express conditions of such contract. The contract of hiring as pleaded was entire, and the agreement for employment was not an independent provision, separable from other provisions of the contract as to the sale and purchase of the pliantiff's business.

(b) The language in the original option as amended can not be said to be so unambiguous that it must be held as a matter of law that the contract of hiring bound the purchaser to employ the plaintiff as manager for the period of one year, so as to make the contract impliedly renewable thereafter from year to year, and thus give to the employee the right to recover unpaid salary when discharged without cause during a subsequent yearly period, independently of the other express provision in the contract that "in event the seller at any time during such period is relieved of his duties as such manager without cause, [the purchaser agrees] to buy his 150 shares of Class A stock in the proposed corporation for cash at and for the purchase-price of $101 per share." This language rendered the contract ambiguous, in failing to express clearly the intent of the parties as to the period of employment, and as to the rights and remedies of the seller if as manager he was "relieved of his duties without cause." It was, therefore, a question for the jury to determine, under the contract, in the light of the attendant facts and circumstances, whether the parties intended a year's contract, or only an indefinite hiring terminable at the will of the employer purchaser upon his purchase of the employee's stock; and also whether, if the contract was one from year to year, and was terminated without cause, the parties intended that the payment of the $101 a share to the employee for his 150 shares of "Class A stock" should be in lieu of any other compensation for salary for the remainder of the year's employment after such termination, or whether the purchase

of stock was intended to be not exclusive of the right to such salary.

(c) The provision in the contract that if the employer should discharge the employee without cause, the employer would buy his 150 shares of described stock at $101 a share, if it stood alone and were construed independently of other provisions in the contract, would be a penalty rather than liquidated damages. The amount to be paid would thus bear no relation to the salary of $300 a month; it would be, as was said in *Mayor &c. of Brunswick* v. *Ætna Indemnity Co.*, supra, "in some instances too large and in others too small a compensation for the injury thereby occasioned," according to the actual value of the stock at the time of the purchase, and would be an attempt to fix the amount of damages arbitrarily, in contravention of the simple and fixed legal rule applicable to the contract, whereby the measure of damages would be the unpaid agreed compensation for the remainder of the year after a wrongful discharge, in the event that the jury should find that the contract was one from year to year. But since this provision must be taken and construed as a part of the entire contract of purchase, creating the additional rights and obligations between the parties that have already been considered, it can not be taken as a void penalty merely attempting to fix the measure of damages in case of the employee's wrongful discharge, as would be the case if it stood alone, and can not (as such a void provision) be eliminated so as to entitle the employee to recover the unpaid salary merely upon the agreement to employ him at the annual salary of $3600, payable in monthly installments of $300 each, without regard to the other rights and obligations of the contract. All the provisions in the contract would be for the consideration of the jury, to determine the intention of the parties as to the period of the employment and as to their respective rights and remedies which would follow a wrongful discharge.

6. Under the evidence, it appears that the employee's stock in question was sold to a third person long prior to his discharge, so that, if the purchaser of the business had attempted to buy the stock at the price and in the manner provided in the contract, it would not have been available. If, therefore, under the preceding rules, the jury, in considering the entire contract in the light of the surrounding facts and circumstances, should find in favor of the defendant employer that the parties did not intend a year's contract but only an indefinite hiring terminable at the will of the employer

by the purchase of the employee's stock; or if they should find that, although the contract was one from year to year and was terminated without just cause, the parties intended that, upon the purchase and payment of the stock as provided by the contract, the further duties and liability of the employer would terminate, there could not be a recovery, and the verdict and judgment should be for the defendant. But if the jury should find that the contract was one by the year, renewable from year to year, and was terminated without just cause before the end of such a renewed year, and that the parties did not intend that the purchase of and payment for the stock should exclude the right to receive the additional salary which might become due for the remainder of the year following the discharge, the plaintiff would be entitled to recover.

7. The contract was not void because it was not sufficiently definite as to time or amount. Nor was it lacking in mutuality, upon the contention that "the employer could discharge with or without cause, and the employee could quit at any time without reason." See 18 R. C. L. 494.

8. On the issue as to whether the plaintiff was discharged with or without cause, counsel for the employer, the plaintiff in error, make this concession and contention: "While there was testimony on both sides as to cause for the discharge, we admit that the evidence justified the verdict on this issue. Of course, if discharged for cause, plaintiff would have no case. Assuming that he was discharged without cause, then we submit that the terms of the contract specifically cover this contingency, and provide what shall be the result of the discharge without cause." Error is assigned on the charge of the court limiting the jury to a determination of the one question as to whether or not the plaintiff was discharged for or without cause, and instructing them that "if he was not discharged for cause, then he would be entitled to recover a verdict at your hands for $600," and interest; upon the ground that it excluded from the consideration of the jury the defense that, under the admitted amendment to the option contract and two erroneously excluded letters, throwing light upon the intention of the parties, the plaintiff's rights were limited solely to the sale and delivery to the defendant of his shares of stock and a receipt of the agreed purchase-price, if he should be relieved of his duties as manager without cause. While, under the general grounds, the verdict for the

plaintiff was authorized upon the issue as to whether the discharge was without cause; under the special grounds, in accordance with the foregoing rulings, the court erred in narrowing the issues to the one question stated. The contract being ambiguous, the additional defense pleaded should have been submitted to the jury.

9. It was also error to exclude from evidence the two letters set forth in the 1st and 2d special grounds and just referred to. These tended to clarify or explain the intention of the parties as expressed in the subsequent ambiguous letter of amendment to the option. In the first letter, of April 15, 1927, from the plaintiff to the purchaser, he referred to the "prospective trade" in the option, which, although bearing date of April 11, 1927, appears not to have been consummated until July 13, 1927. The original option containing no express obligation to employ the plaintiff, the letter referred to this omission, and proposed that the plaintiff as seller of his business "should have the option of turning in [his] block of Class A stock and to be paid for same in cash at the price of $101 per share, provided [he] should be displaced as manager within five years from date of sale." The letter of April 16, in which the purchaser replied to the letter from the plaintiff, partly refused and partly accepted the proposed amendment to the option and contract of sale, limiting the agreement to purchase the stock to a discharge "without cause." In the admitted letter of July 13, 1927, the effect of the two previous letters was summarized. The ambiguities in the option contract as finally amended being for the determination of the jury, pertinent surrounding circumstances throwing light upon the intent of the parties were admissible. The excluded letters tended to throw such light upon the meaning of the contract. The final letter of July 13, attempted to state in general terms the effect of the previous letters, and was not in contravention of this correspondence.

10. The law applicable to the case being determined by the preceding rulings on the general and special grounds, under the evidence and charge of the court, the final judgment being reversed for the reasons stated, and the questions presented not sufficiently appearing for determination merely from the face of the pleadings, there was no error, under the exceptions pendente lite, in overruling the demurrers to the petition.

*Judgment reversed. Stephens and Sutton, JJ., concur.*