56545, 56546. HAMILTON et al. v. TRUELOVE et al.; and vice versa.

QUILLIAN, Presiding Judge.

The instant litigation involves the heirs at law of George W. Dorsey, who died intestate on February 16, 1929. On August 20, 1929, the heirs entered into an agreement which recited that George Dorsey owned certain real and personal property and "in order to save the expense of administration and to hold the property together during the life of the mother, Mrs. Ida Dorsey, and that she may have a home thereon, we hereby agree that she have all the personal property and the real property so long as she lives or remains a widow to manage and use as she may see proper and that she have the rents, issues and profits thereof for her support and that at her death or upon her marriage said property is to be sold and divided equally among her heirs, same being the heirs of C. W. Dorsey."

On May 16, 1969, the heirs entered into agreement which recognized the former agreement of 1929 and set out "in consideration of their mother's sickness and the expenses involved, it has been agreed between all the heirs-at-law that medical care and the well being of their mother's health comes first." The parties mutually agreed:

"(1) That Mr. or Mrs. W. H. Truelove shall maintain and take care of the comfort and support of Mrs. Ida Dorsey as long as she may desire to stay with them.

(2) That Mr. or Mrs. W. H. Truelove shall borrow or

secure a loan of Five Thousand Dollars ($5,000) to maintain and keep Mrs. Ida Dorsey.

(3) That books shall be maintained on all income and expenses for Mrs. Ida Dorsey.

(4) That the present funds of Mrs. Ida Dorsey in the amount of One Thousand Nine Hundred Fifteen Dollars and Fifteen Cents ($1,915.15) shall be used to repay the expenses advanced by each child and that each child shall submit to Mr. and/or Mrs. W. H. Truelove the expenses that they have incurred for their mother's expenses in the past.

(5) That it is further authorized that the Five Thousand Dollars ($5,000) borrowed funds shall bear interest at six (6) percent per annum, and at the end of each year the interest shall be paid to the holder of the Deed to secure debt against the property owned by all heirs-at-law.

(6) That a deed to secure debt be issued for the five thousand dollars ($5,000) against the property owned by all the heirs-at-law and if further funds are necessary for their mother's care and support, then another deed to secure debt shall be issued in lieu of this one with all the necessary signatures thereon.

(7) That all taxes or insurance shall be paid by Mr. or Mrs. W. H. Truelove during Mrs. G. W. Dorsey's (Ida) lifetime and at her death all outstanding debts shall be paid and if any funds remain, then it shall be divided equally among her heirs.

(8) It is further understood that each one of the heirs shall sign this agreement, deed to secure debt and mortgage note, and said deed to secure debt shall be filed with the clerk of court as a lien against the property of the late George W. Dorsey in White County, Georgia.

(9) That all indebtedness, including the funeral expenses, shall be paid before any division of said property to heirs upon the death of Mrs. Ida Dorsey.

For the consideration aforesaid, we hereby for ourself and family have hereunto set our hand and seal, and each of us shall be jointly and severally obligated hereunder.

Signed, sealed and delivered this the *16th* day of *May* 1969." This agreement was executed by all except three of the heirs-at-law.

Ida Dorsey died intestate on May 8, 1974. Mrs. Truelove (one of the appellees in the main appeal and one of the appellants in the cross appeal) qualified as administratrix of the George W. Dorsey estate and Ida Dorsey estate. She then applied for and obtained an order to sell the real property formerly owned by George W. Dorsey. After the sale of the land, which brought $74,000, the Trueloves contended that the expenses they incurred in maintaining Ida Dorsey exceeded that sum and they were therefore entitled to the proceeds of the sale. J. W. Hamilton and other heirs (appellants in the main appeal and appellees in the cross appeal) contested this assertion and contended that they were entitled to their share of the proceeds from the sale of the property. They argued that under the terms of the contract that the Trueloves were entitled to expenses only up to the sum of $5,000 and that amounts in excess thereof could not be deducted from the proceeds.

The issues were joined in the probate court and after a ruling there the Trueloves appealed to the superior court. In the superior court both sides moved for summary judgment and the cause came on for hearing. After the hearing the trial judge found that all heirs at law who signed the agreement of May 16, 1969 were bound by the contract and that the debts of Ida Dorsey are to be paid out of the estates of George W. Dorsey and Ida Dorsey. The court further found that the heirs in law who did not sign the contract were entitled to their proportionate share of the estate and so ordered.

In the main appeal No. 56545 the Hamiltons contend that the portion of the order permitting the debts in excess of $5,000 to be deducted from the proceeds of the sale was error. In the cross appeal No. 56546 the Trueloves contend that it was error to permit the heirs at law who did not sign the May 16, 1969 agreement to recover a sum proportionate to their share of the estate. *Held:*

1. The issue here is basically a simple one: under the terms of the May 16, 1969 contract, did the heirs at law agree that the Trueloves were to be reimbursed for expenditures made in supporting Ida Dorsey when such expenditures exceeded $5,000? A clearcut resolution of this issue is thwarted by the terms of the contract which

are clouded with ambiguity and couched in uncertain language insofar as ascertainment of the parties' intention is concerned.

The contract imposed an obligation on the Trueloves to maintain Mrs. Dorsey, but then provided that they shall borrow or secure a loan which shall bear interest at 6% to be paid to the holder of the deed to secure debt which shall be issued against the property. Despite the terminology used with regard to the Trueloves' obtaining a loan, in actuality the record shows that the Trueloves were the lenders to whom the interest was due and were the grantees of the deed to secure debt with the other heirs at law being the grantors thereof. The contract provided that if sums in excess of $5,000 were needed another deed to secure debt shall be issued but insofar as the record reveals none ever was.

The Trueloves contend that they were entitled for expenses extending back over a thirty-year period prior to the time of the execution of the contract and up until the death of Mrs. Dorsey. The only mention of the contract made with regard to past expenses was a sum of $1,915.15 which would be used to repay expenses advanced by each child who should submit to the Trueloves the expenses they incurred for their mother's expenses in the past. The contract also states that all indebtedness, including the funeral expenses, shall be paid before any division of the property to the heirs. Using this latter language the Trueloves' contention that they are entitled to their expenses might be sustained. However, because of the reference to the $5,000 and the loan in such amount and the further requirement to obtain a subsequent loan if greater sums were needed, the Hamiltons' contention also has merit. The contract is fraught with uncertainty and requires parol evidence to indicate with any degree of accuracy what the parties intended.

In our determination of this case we recognize the principles with regard to contracts set forth by Judge Clark in *American Cas. Co. v. Crain-Daly Volkswagen, Inc.,* 129 Ga. App. 576, 579 (200 SE2d 281) wherein it was held: "Contracts, even when ambiguous, are to be construed by the court and no jury question is presented unless after application of applicable rules of construction

an ambiguity remains." We have applied all the applicable principles of construction of which we are aware and have not acheived a resolution of the issue presented. If the rule regarding construction of an ambiguous contract against the scrivener might be applied and the Trueloves prepared the contract then the Hamiltons might prevail especially since the issues are presented on motion for summary judgment. Nevertheless, the record does not accurately or conclusively establish who prepared the instrument. As we have pointed out the phraseology in the contract is as capable of one construction as another. If we consider parol evidence in order to ascertain the parties' intent, again since this is on motion for summary judgment, the court would be authorized to make a determination only if as a matter of law one finding were possible. No determinative showing was made.

From the foregoing, we reach the conclusion that this is one of those rare instances when the contract is not susceptible to the pertinent rules of construction and, since the terms of the contract are ambiguous, the question involving the intention of the parties must be left for resolution by a jury. *Williams v. McCoy Lumber Industries,* 146 Ga. App. 380 (3) (246 SE2d 410). It should further be noted that the evidence with regard to the expenses incurred by the Trueloves was not conclusive so as to warrant the grant of a summary judgment for the entire amount in favor of the Trueloves.

The motion for summary judgment was erroneously granted.

2. The cross appeal is devoid of merit. Those heirs at law who did not execute the 1969 agreement could in no sense be bound by its terms and they were entitled to their share of the estate as found by the trial judge.

*Main appeal (56545) reversed. Cross appeal (56546) affirmed. Webb and McMurray, JJ., concur.*

ARGUED SEPTEMBER 7, 1978 — DECIDED NOVEMBER 14, 1978.

*Maylon K. London,* for appellants.

*Strother, Hicks & Wallace, Glenn H. Strother,* for appellees.