61629. SALVATORI CORPORATION et al. v. RUBIN.

SOGNIER, Judge.

Appellee Rubin was employed by Swank; appellant Salvatori sought to employ Rubin, who ultimately left Swank to work for Salvatori. Salvatori and Rubin entered into an employment contract consisting of two documents. One pertained to compensation, business expenses and insurance, and the other covered additional compensation (pension benefits). The latter document was guaranteed by appellant Pacesetter Industries.

Prior to entering into the employment contract, Rubin obtained a calculation of the lump sum value of his accumulated pension benefits with Swank (about $51,000) from Swank's pension supervisor, Gately, and advised appellants of this amount. Appellants agreed to compensate Rubin for the loss of his pension rights, and an agreement covering such rights was executed on October 18, 1974. Subsequently, attorneys for appellants obtained directly from Gately the method of computation and amount of

pension benefits Rubin would have been entitled to receive had he stayed with Swank. This figure was the same as that furnished earlier by Gately to Rubin. The amount was never disputed and appellants' attorneys communicated this figure to Rubin in May 1975. In June 1976 appellants had their own actuaries recompute the amount of Rubin's pension with Swank based on Salvatori's pension plan assumptions (using a different criteria), and calculated the sum to be $35,129.74. This information was not communicated to Rubin.

Rubin continued to work for Salvatori and in 1978 the parties executed a new agreement providing for Rubin's compensation, insurance coverage, vacation, severance pay and fringe benefits. A part of the prior agreement (the document dated October 18, 1974) pertaining to additional compensation (pension) was continued in effect at this time. Appellants admitted that at the time the new contract was executed the amount of the additional compensation based on the original figure of $51,000 was not in dispute.

Rubin contends that on August 4, 1978 his employment was terminated, but he was permitted to continue on the Salvatori payroll while he was looking for another job. Appellants contend that Rubin was advised that he should look for another job as the company could only afford a salary for one executive, not two, and that Rubin had resigned. Rubin continued working for appellants for two additional months, then returned immediately to Swank without any loss of work.

Rubin brought this suit against appellants seeking recovery of his lost pension benefits and severance pay. Appellants denied any indebtedness; however, in the alternative they pleaded that an insurance funding of the pension rights was substituted therefor and further, that the amount if due was to be computed under the Salvatori plan and would be $35,129.74. Indebtedness was also denied under the severance pay provision upon the theory that Rubin lost no pay through the change of employment and was not actually terminated. The jury found for Rubin in the amounts he sought for pension rights and severance pay.

Appellants contend the trial court erred (1) by denying their motion for judgment notwithstanding the verdict that the additional compensation amount (pension) be reduced to $35,129.74; (2) by submitting to the jury the question of whether or not appellants' breach of the additional compensation agreement was such a denial of liability as to authorize a lump sum award of damages where the contract provided for installment payments; (3) by admitting into evidence certain letters pertaining to the Swank pension plan figures, either as an admission or for estoppel purposes, when such admission was not authorized by the evidence; (4) and by giving an incomplete

charge on termination of employment.

1. The essence of enumeration 1 is that the contract provision is clear and unambiguous and that the amount of pension rights should have been determined by the court, not by the jury. Paragraph 2 of the Additional Compensation Agreement provides:

" 2. The designated sum as set forth in this Agreement shall mean a sum equal to the difference between (a) the amount (actuarially calculated) Rubin would have been entitled to receive (including his own contribution) as a lump sum under The Swank, Inc. Salaried Employees' and Salesmen's Pension Plan (hereinafter called the 'Swank, Inc. Pension Plan') upon his termination of service with Swank, Inc. on 10/23/74 assuming for purposes of calculating this amount both that the Swank, Inc. Pension Plan had provided for 100% vesting upon termination of service after attaining the age of forty-five (45) years and that such vested benefit were (sic) immediately payable in a lump sum, and (b) the amount (actuarially calculated) that Rubin is entitled to receive (including his own contribution) under the Swank, Inc. Pension Plan upon his termination of service with Swank, Inc. on 10/23/74, assuming for purposes of calculating this amount that the benefit to which he is entitled under such plan were (sic) immediately payable in a lump sum." Appellants contend that Paragraph 2 is modified by the definition of actuarial computation set forth in Paragraph 6 of the same agreement and this requires the actuarial computation to be computed under the Salvatori plan. Paragraph 6 provides:

"6. In making any actuarial computations hereunder, the actuarial assumptions then in effect used in administering the qualified pension plan of Salvatori shall be used provided, however, that in connection with computing interest for all actuarial purposes the per annum rate of 5% shall be used." The amount Rubin is entitled to, actuarially calculated under the Swank, Inc. program is $51,354.44 ($49,406.06 as reduced by the judge under stipulation), as compared with $35,129.74 if the actuarial calculation is made exclusively under the Salvatori plan. To the contrary, appellee contends that Paragraph 6 refers only to actuarial computations which are made for the period after October 23, 1974, the date Rubin left Swank to work for Salvatori; that is, only the period from the new employment until its termination. In interpreting this contractual provision the court admitted extrinsic evidence and submitted the issue as to what computation would be used to the jury. The jury responded by using the Swank, Inc. computation.

We agree with appellants that ordinarily the construction of a contract is a question of law for the court, *Batson-Cook Co. v. Poteat,* 147 Ga. App. 506 (249 SE2d 319) (1978); but where the terms of a

written instrument are ambiguous, its meaning should be left to the jury. *National Manufacture &c. Corp. v. Dekle,* 48 Ga. App. 515, 521 (173 SE 408) (1933). Here, we have an agreement capable of conflicting interpretations and thus, it may be considered ambiguous. For the purpose of aiding in the interpretation of a contract, the surrounding circumstances may be proved. "Ambiguity in a contract may be defined 'as duplicity, indistinctness, an uncertainty of meaning or expression.' " *Tarbutton v. Duggan,* 45 Ga. App. 31 (5) (163 SE 298) (1931). The existence or nonexistence of an ambiguity in a contract is a question of law for the court. *Cassville-White Assoc. v. Bartow Assoc.,* 150 Ga. App. 561, 564 (258 SE2d 175) (1979). The trial court decided that the additional compensation provisions were ambiguous when it submitted the question to the jury. We have examined carefully the contested provisions. After applying all of the applicable principles of the construction to the provisions, we agree with the trial judge that the contract is ambiguous, and thus a jury question was presented. *Hamilton v. Truelove,* 148 Ga. App. 116, 119-120 (250 SE2d 864) (1978). The jury having resolved the issue against appellants, the trial court correctly denied the motion to reduce the judgment as requested.

2. Next, appellants contend that they did not deny liability with regard to additional compensation completely; therefore, a lump sum award of damages of the "designated amount" was not authorized, since payment by installment was provided for in the contract. The jury, aided by Gately's letter, found that Rubin was entitled to receive $51,354.44. This amount under Rubin's agreement with Salvatori, "provided . . . and payable in a lump sum," was an amount Rubin was entitled to when he executed the contract with Salvatori. The jury was authorized to find damages in this amount.

Further, the additional compensation (pension plan) agreement entitled Rubin to his pension rights under the Swank plan upon termination of employment in 10 equal installments or, with the consent of the board of directors of Salvatori, a lump sum payment. We have held that an obligor's absolute denial of liability under a contract to pay money may operate as a waiver of an option under the contract to pay the funds in installments and authorize the jury to award lump sum damages for the breach. *Travelers Ins. Co. v. Lancaster,* 51 Ga. App. 390 (180 SE 641) (1935); see also *Metropolitan Life Ins. Co. v. Day,* 145 Ga. 425 (89 SE 576) (1916); and *Hunter v. Benamy Realty Co.,* 115 Ga. App. 829 (156 SE2d 160) (1967). Appellants claim that they did not make an absolute denial of all liability so as to authorize the application of this legal principle. As stated earlier, appellants first denied all liability and then pleaded in

the alternative partial avoidance of full liability. There was sufficient evidence to authorize the judge to submit this issue to the jury. The jury determined the issue of the amount of damages adversely to appellants, and we will not disturb the jury's finding if there is some evidence to support the verdict and the contrary evidence did not demand a verdict for appellants. *Church's Fried Chicken v. Lewis,* 150 Ga. App. 154, 159 (256 SE2d 916) (1979). We find no merit in this enumeration of error.

3. Appellant contends that the trial court erred by admitting into evidence letters showing the figures and correspondence that Gately furnished to both Rubin and Salvatori, and correspondence pertaining to the loss of Rubin's pension benefits at Swank. Since an ambiguity existed in the terms of the contract, the letters were properly introduced to shed light on the intentions of the parties. Code Ann. § 20-703 provides: "The intention of the parties may differ among themselves. In such case, the meaning placed on the contract by one party, and known to be thus understood by the other party at the time shall be held as the true meaning." Where a letter from one party to a contract to the other party showed that the writer placed a different construction on a contract than did the other party, the latter's silence was acquiesence in such construction. *Peninsular Naval Stores v. Parrish,* 13 Ga. App. 779 (80 SE 28) (1913). Correspondence between the parties to a contract which tends to clarify or explain the intention of the parties is admissible to throw light on the meaning of the contract. *National Manufacture &c. Corp. v. Dekle,* supra at 527. Thus, the admission of the letters was not error.

4. Finally, appellant contends that the trial court erred in its charge to the jury regarding termination of employment and severance pay. The following provision regarding severance pay is a part of the contract:

"6. The company agrees to a six (6) months severance clause as follows:

"a. Should you be terminated by the company, the company agrees to pay you six (6) months severance on a regular monthly basis.

"b. Should you resign, the company agrees to pay you for six months and, of course, reserves the right to request continued service on your part for the company for this period. Obviously, if you accept other employment prior to the six month period, the severance pay will cease." The judge, in charging on termination of employment, made the following charge: "I charge you further that when an employer, either by acts or words, shows a clear intention to dispense with the services of an employee, the employee has been discharged and terminated by the employer." Appellants contend that this

charge was error on the grounds that it was not complete and failed to add the following words: "and that the discharge occurs at the latest as of the date after which the services are no longer accepted." The entire charge is found in Payne v. Crane Co., 560 F2d 198, 199 (5th Cir. 1977). Appellants argue that Rubin continued to work for a part of the six month period, suffered no employment loss, and was not entitled to any severance pay; in any event, he was not entitled to the full six months severance pay.

Appellee contends that he was involuntarily terminated. The sole issue for the jury was involuntary termination. If the termination was involuntary, subparagraph (a) of Paragraph 6 would apply; otherwise, subparagraph (b) of Paragraph 6 would apply. The jury found that there was an involuntary termination; thus, the date of termination was immaterial, as the right to six months severance pay was absolute in the event of involuntary termination, and was not affected by the fact that Rubin had obtained other employment. If the jury had found otherwise, subparagraph (b) would have been applicable and there would be no entitlement to severance pay. Thus, we find no error in omitting the portion of the charge referred to by appellants. The fact that appellee continued to work and rendered services to appellant with its acquiescence for a period of two months does not constitute any modification of the agreement or a change in the nature of the involuntary termination of appellee's services by appellants. Thus, the trial court's charge was correct.

*Judgment affirmed. Shulman, P. J., and Birdsong, J., concur.*

DECIDED JULY 7, 1981 —
REHEARING DENIED JULY 22, 1981 —

*Hugh W. Gibert, James W. McKenzie, Jr.,* for appellants.
*J. Kirk Quillian, Donald W. Janney,* for appellee.