179 Ga. App. 660 (1986)
347 S.E.2d 615
GANS et al.
v.
GEORGIA FEDERAL SAVINGS & LOAN ASSOCIATION.
72175.
Court of Appeals of Georgia.
Decided June 18, 1986.
Rehearing Denied July 7, 1986.
Robert W. Chestney, for appellants.
Paul H. Anderson, for appellee.
DEEN, Presiding Judge.
In March 1965 Melvin Warshaw (not a party to the instant case), as president of Bankhead Estates, Inc. ("Bankhead"), executed the first of a series of promissory notes and deeds to secure debt in favor of appellee Georgia Federal Bank (formerly known as Atlanta Federal Savings & Loan Association and hereinafter referred to as "bank"). Only the first loan was the subject of the litigation underlying the instant appeal. This loan, according to testimony by bank officials, represented a combination construction-permanent loan for the completion of the first phase of an apartment development on Bankhead Avenue (also called Bankhead Highway) in Atlanta. Appellant Jack Zwecker was among the original investors and at various times served as secretary and president of Bankhead; it is undisputed, however, that he had nothing to do with the negotiation of the loan at issue here.
The subject note is dated March 25, 1965 and reads in pertinent part: "For value received, the undersigned promises to pay Atlanta Federal Savings & Loan Association, or order . . . Five hundred four thousand and no/100 Dollars, in lawful currency of the United States with interest thereon from date at the rate of 6 1/2% per annum and payable without grace as follows: in monthly installments of $3,965.00 each, the first of said installments becoming due on March 25, 1966[,] and one installment maturing on the same day of each successive month thereafter until the entire indebtedness due hereunder has been paid in full, so as to liquidate the entire indebtedness evidenced hereby (principal and interest) on or before February 25, 1984. Each monthly installment shall be applied, first, to the payment of any interest due hereunder, and the remainder of said installment shall be applied to the payment of the principal due hereunder . . . This note is secured by Security Deed of even date herewith . . . , to which deed reference is hereby made." The note also contains such standard provisions as prepayment, acceleration, and waiver clauses.
The security deed, also dated March 25, 1965, recites: "The note secured by this instrument provides for payment of monthly installments so as to liquidate the principal and interest on the indebtedness secured hereby on or before February 25, 1984." The security deed further recites: "And the party of the first part [Bankhead], for himself, his heirs, legal representatives, successors and assigns, hereby *661 covenants and agrees . . . : FIRST  That the party of the first part will pay and discharge the full amount, principal and interest, due under the terms of said note . . . and will punctually pay all installments therein specified to be paid as they become due and payable"; "Party of the first part agrees to pay with each monthly installment called for in note hereinabove mentioned one-twelfth of the annual taxes and fire insurance . .. premiums due on property as estimated by grantee or assigns"; and "Should the party of the first part, or the . . . successors or assigns . . . , fail to make payment of any taxes, assessments, insurance premiums, or other charges payable by the undersigned, [Georgia Federal] may . . . make payment thereof, and any amount so paid, with interest thereon at eight per cent per annum, shall be added to and become a part of the principal debt secured by this conveyance . . . , and for such payment with interest as aforesaid the premises hereinbefore described, as well as the said party of the first part  heirs, legal representatives, successors and assigns, shall be bound to the same extent that they are bound for the payment of the indebtedness secured by this deed."
As time passed, some of the original investors sold their interests in the property to others, including appellants; the Zweckers retained and augmented their ownership interest. Jack Zwecker testified that the acquisitions were made on an informal, "all in the family" basis, with one friend relying on the representations of another friend in the chain of communication between the original investors and the present owners, appellants sub judice. Ultimately, appellants became the sole owners but took no active part in management of the property, leaving this to a series of hired managers. Payments on the loan were ordinarily made by the managers in a timely manner,[1] in the amount and on the terms recited in the opening clause of the promissory note, supra, the gist of which had apparently been communicated to appellants at some point during their gradual acquisition of the property. In the action brought below, appellants contend, however, that they never saw a copy of the note or security deed until after receiving, in early 1984, a letter from a bank vice-president informing them that a balance of something over $75,000 was due on or before February 25, 1984. Jack Zwecker testified that he had been under the impression that a payment of $3,965 on that date would fully discharge their obligations on the note. Bank officials involved in negotiation of the loan testified, on the other hand, that the original parties' understanding of the terms of the note was that payment of the accrued interest for March 1965 through March 1966 would be deferred and capitalized *662 and the maturity date extended accordingly. Warshaw testified to the same understanding. There was also testimony that all subsequent loans made to Bankhead by the bank, except for the last one of the series, were made on the same terms and with the same understanding, although, as in the subject note, the deferral and extension provisions were not spelled out in the documents.
In their action below, appellants sought to establish that the total indebtedness would be discharged by the monthly payments recited in the note; it was stipulated that 216 monthly payments of $3,965 would precisely amortize a loan of $504,000 with interest at 6-1/2% over a period of 18 years. Appellees contended that the first year's interest and the interest calculated thereon, as well as sums owed because of occasional failures to make timely payment on certain items recited in the note and security deed, supra, must be added to the face value of the note in order to arrive at the total indebtedness and the final balance due. The trial court found an ambiguity which could not be resolved by application of the rules of construction and pronounced the issue to be one for jury resolution. The court then admitted testimony by Warshaw and by the bank's former president and loan officers to resolve the purported ambiguity by attesting to the original parties' intention. At the close of the evidence the trial court denied appellants' motion for directed verdict and granted that of appellee. The Ganses and Zweckers appeal from this judgment, enumerating as error (1) the submission of the case to a jury; (2), (3), the admittance of the testimony of Duvall (the bank's former president) and Warshaw regarding the parties' intention; (4), (5) the denial of appellants' motion for directed verdict and the granting of appellees' motion; and (6) the entry of judgment upon the verdict. Held:
It is ordinarily the duty of the court to interpret a contract as a matter of law and, where necessary, to construe it by applying the rules of construction set forth in OCGA § 13-2-2. See also OCGA § 13-2-1; Smiths' Properties v. RTM Enterprises, 160 Ga. App. 102 (286 SE2d 334) (1981). The cardinal rule for construing a contract is to ascertain the intent of the parties. Mutual &c. Ins. Co. v. Davis, 79 Ga. App. 336 (53 SE2d 571) (1949). Where the language of an instrument may fairly be understood in more than one way, it should be interpreted to reflect the sense in which the parties understood it at the time of execution, and extrinsic evidence is admissible to establish what that original understanding was. National Mfg. & Stores Corp. v. Dekle, 48 Ga. App. 515 (173 SE 408) (1934). That meaning is to be preferred which will give effect to the contract as a whole. OCGA § 13-2-2 (4).
If, after application of the rules of construction, there remains an ambiguity, then it becomes the duty of the jury, as finder of fact, to construe the instrument so as to resolve that ambiguity. Andrews v. *663 Skinner, 158 Ga. App. 229 (279 SE2d 523) (1981); Williams v. McCoy Lumber Indus., 146 Ga. App. 380 (246 SE2d 410) (1978). It is the court who decides whether or not, after application of the rules of construction, an ambiguity exists. Salvatori Corp. v. Rubin, 159 Ga. App. 369 (283 SE2d 326) (1981); Cassville-White Assoc. v. Bartow Assoc., 150 Ga. App. 561 (258 SE2d 175) (1979).
In the instant case appellants contend that it was the duty of the court rather than of the jury to interpret the contract sub judice. Somewhat inconsistently, however, appellants also contend that the phrase "from date" appearing in the fifth line of the note is ambiguous and should be construed to refer to a date other than the date of execution. They cite Howard Piano Co. v. Glover, 7 Ga. App. 548 (67 SE 277) (1910), in support of the proposition that the context of the instrument should determine the meaning of the cited phrase. We agree that this proposition is correct in the abstract, and that this is what Howard stands for. Because of factual distinctions, however, Howard is inapposite to the instant case. American Cyanamid Co. v. Ring, 248 Ga. 673 (286 SE2d 1) (1982), also relied on by appellants as to the date from which interest was to accrue, is likewise inapposite because of significant factual distinctions.
Applying the principle that words are to be understood in their "usual and common signification," OCGA § 13-2-2 (2), the court below found the meaning of "from date" perfectly clear; that is, March 25, 1965, the date of execution of the instrument. The court did find an ambiguity as to the original intention, however, which difficulty was produced by the juxtaposition of the terms requiring interest to begin accruing on March 25, 1965, and final payment to be made not later than February 25, 1984, with that term setting the payments at $3,965 per month. To attempt to implement all these provisions would create a mathematical impossibility and a logical and semantic ambiguity. When the language of a contract "is ambiguous, there being more than one way it could have been construed, . . . it was within the province of the jury to construe it." Travelers Ins. Co. v. Blakey, 177 Ga. App. 1, 2 (338 SE2d 451) (1985). The court acted within its statutory mandate in consigning the issue to the jury, OCGA § 13-2-1, and appellants' first enumeration is without merit.
As we have noted in Division 1, supra, when it is impossible to determine the intent of the parties from the language of the contract itself, it is proper to introduce extrinsic evidence, including parol evidence, to establish that intent. Andrews v. Skinner, supra; Taylor Freezer Sales Co. v. Hydrick, 138 Ga. App. 738 (227 SE2d 494) (1976); Chambliss v. Hall, 113 Ga. App. 96 (147 SE2d 334) (1966). The proscription of parol evidence, which was designed to protect the finality of contracts, applies only when the contract on its face is complete and unambiguous. Early v. Kent, 215 Ga. 49 (108 SE2d 708) *664 (1959); R. S. Helms v. GST Dev. Co., 135 Ga. App. 845 (219 SE2d 458) (1975). The rule requiring that an ambiguous contract be construed against its draftsman, OCGA § 13-2-2 (5), is inapplicable in the instant case because all the original parties to the instrument agreed as to their intent and the contract's purpose. Although the draftsman here, appellee, would have done far better to incorporate all the terms and contingencies in the written instrument, appellants' misunderstanding (if it is properly so designated) of their contractual obligation is primarily due to either a failure of communication with their predecessors, or a lack of due diligence in ascertaining the nature and extent of the obligation they were assuming.
3. Having held, supra, that it was proper for the jury to hear parol evidence in order properly to construe the contract's ambiguous provision, we find, upon examination of that evidence, that it was sufficient to meet the statutory criteria for direction of a verdict for appellee; OCGA § 9-11-50 (a). The court did not err in denying appellants' motion for directed verdict and granting that of appellee. Moreover, the court was obligated, in the circumstances, to enter judgment upon the verdict. See generally OCGA §§ 15-1-3; 15-6-9; 15-6-10; Jefferson v. Ross, 250 Ga. 817 (301 SE2d 268) (1983). Appellants' fourth, fifth, and sixth enumerations of error are also without merit.
Judgment affirmed. Benham and Beasley, JJ., concur.
NOTES
[1] There was testimony that on at least one occasion the bank, at Bankhead's request, had granted a moratorium to permit Bankhead to stabilize its cash flow.